WORLD PUBLISHING COMPANY v. JOHN S. MULLEN.

FILED DECEMBER 5, 1894. No. 5399.

1. **Libel: Construction of Words.** The courts no longer strain to find an innocent meaning for words *prima facie* defamatory, neither will they put a forced construction on words which may fairly be deemed harmless.

2. ———: ———. Any written or printed statement which falsely and maliciously charges another with the commission of a crime is libelous *per se*.

World Publishing Co. v. Mullen.

3. ———: ———. In determining whether the words of a publication are libelous the courts will not resort to any technical construction of the language used, but read the language in court as they would read it elsewhere.

4. ———: ———. Language alleged to be libelous is to be construed in its ordinary and popular sense, and the question is whether the language, when so construed, conveys, or is calculated to convey, to persons reading it the charge of a crime.

5. ———: ———. A publication, to be libelous *per se*, because charging another with the commission of a crime, does not need to contain the technical statutory language and phrases essential to a good indictment for the crime charged.

6. ———: ———. Any language the nature and obvious meaning of which is to impute to a person the commission of a crime, or to subject him to public ridicule, ignominy, or disgrace, is actionable *per se*.

7. ———: ———. *Finch v. Vifquain*, 11 Neb., 280, *Rosewater v. Hoffman*, 24 Neb., 222, and *Pokrok Zapadu Publishing Co. v. Zizkovsky*, 42 Neb., 64, reaffirmed. *Geisler v. Brown*, 6 Neb., 254, overruled.

ERROR from the district court of Douglas county. Tried below before IRVINE, J.

The opinion contains a statement of the case.

*Morris & Beekman* and *Gurley & Marple*, for plaintiff in error:

The language complained of was not in itself libelous, and there was in the petition no colloquium or innuendo laid by the defendant in error by which it could be made so. The court erred in not entering judgment for the plaintiff in error notwithstanding the verdict. (Odgers, Libel & Slander [1st Am. ed.], 112; *Greenwood v. Cobbey,* 26 Neb., 455; *Sweetapple v. Jesse*, 5 B. & Ad. [Eng.], 31; *West v. Smith*, 4 Dowl. [Eng.], 703; *Tebbetts v. Goding*, 9 Gray [Mass.], 254; *Brettun v. Anthony*, 103 Mass., 37 ; *Jones v. Hungerford*, 4 Gill & J. [Md.], 402; *Geisler v. Brown*, 6 Neb., 259.)

*Mahoney, Minahan & Smyth,* contra, cited: *McMurry v. Martin,* 26 Mo. App., 437; *Iron Age Publishing Co. v. Crudup,* 85 Ala., 519; *Karow v. Continental Ins. Co. of New York,* 57 Wis., 56; *Finch v. Vifquain,* 11 Neb., 280; *Rosewater v. Hoffman,* 24 Neb., 222; *Thomas v. Blasdale,* 147 Mass., 438; *Karger v. Rich,* 51 N. W. Rep. [Wis.], 424; *Montgomery v. Knox,* 23 Fla., 595; *Doan v. Kelley,* 121 Ind., 413; 1 Chitty, Pleading [13th Am. ed.], 656; *McGavock v. Pollack,* 13 Neb., 535; *Renfrew v. Willis,* 33 Neb., 98; *Brown v. Piner,* 6 Bush [Ky.], 518; *St. Martin v. Desnoyer,* 1 Minn., 156.

RAGAN, C.

John S. Mullen brought this, a suit for libel, in the district court of Douglas county against the World Publishing Company, a corporation engaged in the publication of a newspaper in the city of Omaha, and hereinafter called the "Publishing Company." There was a trial to a jury, with a verdict and judgment for Mullen, and the Publishing Company brings the case here for review. The evidence has not been preserved by a bill of exceptions and there was no motion in the court below for a new trial. After the jury had returned its verdict, counsel for the Publishing Company moved the court for judgment upon the pleadings, notwithstanding the verdict, upon the ground that the petition of Mullen did not state a cause of action. This motion the district court overruled, and its ruling on this motion is the only assignment of error argued here.

The article printed by the Publishing Company alleged by Mullen to be libelous and on which he bases his suit is in words and figures as follows:

"MULLEN'S INSURANCE.

*"The Company Declines to Pay the Risk of His Building.*

"John S. Mullen is the plaintiff in two suits in the county court against the German Fire Insurance Company

of Peoria, Illinois. The suits are to recover the value of two insurance policies which Mullen held on his saloon and store in Albright, which were destroyed by fire August 31, 1890. There were a number of suspicious circumstances at the time, and it was reported that Mullen fired the buildings himself. The agent of the insurance company investigated the matter, and as a result the company refused to pay the insurance, which amounts to $1,900 on both policies. Mullen now brings suit and it will be contested by the company. Its agent said it had excellent grounds for contesting the case, but refused to state what facts they were in possession of in regard to Mullen's complicity."

Mullen alleged no special damages in his petition and it contains no colloquium or innuendo, and the argument of the Publishing Company is that the petition does not state a cause of action, as the language is not libelous *per se.* Counsel for the Publishing Company well say: "The courts no longer strain to find an innocent meaning for words *prima facie* defamatory, neither will they put a forced construction on words which may fairly be deemed harmless." Any written or printed statement which falsely and maliciously charges another with the commission of a crime is libelous *per se;* and in determining whether the words of a publication are libelous the courts will not resort to any technical construction of the language used, but the court and the jury will read the words in court as they would read them elsewhere. Language alleged to be libelous is to be construed in its ordinary and popular sense, and the question is whether the language, when so construed, conveys, or is calculated to convey, to persons reading it the charge of a crime. (*Pokrok Zapadu Publishing Co. v. Zizkovsky,* 42 Neb., 64.) The question here then is, what is the plain import, the ordinary meaning of the language of the article published? What would ordinary men of ordinary common sense understand from reading this article? That Mullen owned a saloon and store in Albright; that

13

it was insured against loss or damage from fire in the sum of $1,900 by the German Fire Insurance Company of Peoria, Illinois; that the property was destroyed by fire on August 31, 1890; that there were a number of suspicious circumstances surrounding the destruction of the insured property which caused the insurance company to refuse to pay the loss; that the insurance company at least suspected Mullen of burning the property himself or being an accomplice therein ; and that it was reported—some person or persons had said—that Mullen had burned the insured property. In *Rosewater v. Hoffman*, 24 Neb., 222, Rosewater caused to be published in a newspaper a letter in which he stated that a friend of his had told him that "He [Hoffman] once served me a very scurvy trick. He borrowed my horse and saddle some years ago and rode off and sold the property. He was arrested near Springfield, Missouri, and lodged in jail. The sheriff telegraphed me that he had him in charge, but I finally concluded I would not prosecute him. He was then released. If you write down there you will get other particulars." This language was held by this court to be libelous *per se* because it charged Hoffman with having committed the crime of larceny. It is to be observed that Rosewater in the article did not himself charge Hoffman with having stolen the horse, but that his, Rosewater's, friend had told him, Rosewater, that Hoffman had borrowed the horse and rode it off and sold it. In the case at bar the Publishing Company did not make the direct charge that Mullen had burned his insured property, but the Publishing Company in effect states that some one had reported to it, the Publishing Company, that Mullen had burned his insured property. The Publishing Company should, therefore, be held responsible as if it had charged directly that Mullen committed the crime of arson under section 57 of our Criminal Code. Counsel for the Publishing Company insist that Mullen, in order to have been guilty of arson un-

der the statute, must have willfully and maliciously set fire to his insured property with the intent to obtain the insurance money; and that there is nothing in the language of the article published that charges Mullen with intentionally, unlawfully, willfully, or maliciously setting fire to the insured property, and that, therefore, the language of the publication is not libelous *per se.* To hold that the language of this article is not libelous because it does not contain words necessary to the framing of a good indictment against Mullen for arson would be, in effect, to give one construction to language out of court and another in court. A publication, to be libelous *per se,* because charging another with the commission of a crime, does not need to contain the technical statutory language and phrases essential to a good indictment for the crime charged. In support of their contention that the language of this publication is not libelous *per se* counsel cite us to the case of *Geisler v. Brown,* 6 Neb., 254. The publication in that case was: "Last night Mrs. Geisler beat her little stepdaughter most unmercifully with a club as large as a man's wrist, striking her over the head and making the blood flow freely." It was held that this language was not libelous *per se.* But this case can no longer be regarded as authority, and was, in effect, though not expressly, overruled in *Finch v. Vifquain,* 11 Neb., 280. In the latter case Finch was grand worthy chief templar of a temperance organization of this state and also secretary of the State Temperance Alliance. Vifquain published an article in a newspaper, in which he said of Finch that he was "a seducer of innocent girls, * * * an arch hypocrite and scoundrel, who was simply using his talents for money-making purposes and not through any sincerity in the cause in which he is laboring;" and the court held, and we think correctly, that the language was libelous *per se.* The rule is that any language the nature and obvious meaning of which is to impute to a person the commission of a crime,

or to subject him to public ridicule, ignominy, or disgrace, is actionable of itself. The petition states a cause of action and the judgment of the district court is

AFFIRMED.

IRVINE, C., not sitting.