BEE PUBLISHING COMPANY V. WORLD PUBLISHING COMPANY.

FILED NOVEMBER 7, 1901. No. 9,105.

1. **Admission of Incompetent Evidence, Presumed Prejudicial.** When incompetent evidence is admitted to prove a fact not otherwise conclusively established, and it does not affirmatively appear from the record that the incompetent evidence did not affect, unfavorably to the objecting party, the verdict returned by the jury, the error in admitting such evidence will be deemed prejudicial and the judgment reversed.

2. **Witness: ERROR: WAIVER.** Where a question is asked a witness, and the adverse party, examines such witness as to the competency of the proposed evidence and then interposes an objection to the question which is overruled and an exception taken and the witness is again asked the same question to which an

answer is given without further objection, the objection made to the question first asked and an exception taken to the ruling thereon is sufficient to present for review the admissibility of such evidence.

ERROR from the district court for Douglas county. Tried below before SCOTT, J.

Rehearing of case reported in 59 Nebr., 713. *Judgment of affirmance vacated.* SULLIVAN, J., dissenting.

*Edward W. Simeral* and *Eleazer Wakeley,* for plaintiff in error.

*Hall, McCulloch & Clarkson,* contra.

HOLCOMB, J.

On the application of the plaintiff in error a rehearing has been granted in the present action, the opinion of the court on the former hearing being found in 59 Nebr., 713. A decision was there rendered affirming the judgment of the trial court, conditioned on the defendant in error, plaintiff below, filing a remittitur reducing the judgment obtained in the trial court to the principal sum of $4,000. The cause of action is based on a libelous publication of and concerning the financial responsibility, standing, and business integrity of the plaintiff, well calculated to injure it in the conduct of its business and create serious doubts among its present and prospective patrons as to its ability to continue for but a short period of time its business, meet its obligations and fulfill contracts pertaining to its business, and necessary in the conduct of its affairs. It was represented that it was on the verge of bankruptcy, about to be swallowed up by another newspaper plant, and could not much longer continue as a paying business concern. Both the parties to the action are large newspaper concerns, engaged in the publication of daily and weekly newspapers of wide and general circulation. The libelous article was published by the defendant, and thus given general currency throughout a

wide extent of territory in which the plaintiff's paper circulated, and among many from whom it derived business patronage. Manifestly the article was given publicity in a reckless and wanton disregard of the right of the plaintiff to pursue its business unmolested by false and defamatory statements reflecting on its financial standing, its business integrity and permanency and stability as a newspaper concern. The article was, in the former opinion, held to be libelous *per se,* and with the correctness of the holding there is no room for doubt or discussion. In several particulars the views expressed in the opinion heretofore rendered are challenged, but a most careful consideration and re-examination of the subject confirms us in the views we have heretofore given expression to, save, perhaps, in respect of one question therein commented on and decided, which we will consider at greater length hereafter.

It is contended that the trial court erred in admitting evidence of express malice on the part of the chief proprietor and general manager of the defendant publishing company with respect to the publication of the libelous article. It is held—and, we think, without doubt correctly —in the opinion heretofore rendered in the case that under the issues raised, and in view of the answer tendered by the defendant, which was in effect a plea of the truth of the article, and that it was published with good motives and for justifiable purposes, that proof of malice, not for the purpose of enhancing the damages, but to refute the defense pleaded in the answer, was without prejudice, and proper, especially in view of the instructions given by the court which restricted a recovery of damages to the actual loss sustained. We are content with the views on this phase of the case heretofore expressed, and regard it as not conducing to a better understanding of the case to here again attempt to enlarge upon or more exhaustively discuss this assignment of error.

What we have said respecting the above subject ap-

plies with equal pertinency and force to the contention
of counsel for plaintiff in error to, the purport and effect
that inadmissible testimony was permitted to go before
the jury in the nature of expert or opinion evidence of
two of the witnesses called on behalf of the plaintiff be-
low to prove the probable effect on a large newspaper
establishment, of a libelous statement given circulation
regarding its financial standing, permanency and business
stability.    The evidence we regard as competent, and re-
garding a subject which the average mind would be illy
prepared to pass intelligently upon in estimating the in-
jury sustained by a libelous publication of the kind which
is made the basis of this action, in the absence of testi-
mony of those qualified to speak on the subject of the kind
objected to.    The plaintiff conducted an intricate and com-
plex business enterprise on a large scale, involving an
annual outlay of near two hundred thousand dollars.    To
meet its current expenditures, it was dependent to a great
extent on advertising patronage from the business world
generally.    The elements of solvency, stability and per-
manency would, as a matter of common knowledge, as it
appears to us, be factors which would to a greater or less
degree influence the advertising public in extending pat-
ronage and placing advertising contracts; but all the
factors entering into and inducing contracts for adver-
tising and securing the confidence of advertisers, it seems
equally clear, are matters peculiarly within the knowl-
edge of those having experience in and special information
concerning the management and conduct of the business
of an extensive modern newspaper publication, whose tes-
timony on the subject would be of special value, tending
materially to assist a jury in determining the nature and
extent of the damages sustained by reason of the publica-
tion of a derogatory article of the kind complained of.
We observe no satisfactory reason, and feel that no oc-
casion exists for a revision of the views heretofore ex-
pressed on the two questions mentioned.

There appears to us no very serious or doubtful point

arising in the case on the record presented calling for a modification of the decision first arrived at, aside from the question of the legal effect on the verdict of the jury of certain evidence held in the opinion to be incompetent, but not prejudicial. In the fourteenth paragraph of the syllabus it is held: "The admission of incompetent evidence is not reversible error, if the fact which it tends to prove is otherwise conclusively established." The point stated in the syllabus was occasioned by the admission in evidence of the testimony of Mr. Hitchcock, the manager of the World Publishing Company, plaintiff, as to the falling off or decrease immediately succeeding and to the time of trial in the lower court, of the advertising patronage of the plaintiff company, the figures testified to being the "footings" of the books of the company for several months succeeding the publication complained of, as compared with the same period immediately preceding such publication. The books of the company showing the business of which the witness testified were not introduced in evidence, brought into court, or the failure to produce them explained in any way or accounted for. They were, it appears, within the jurisdiction of the court and convenient to the place of trial. The evidence of the witness, being secondary, was therefore held by us on the former hearing to be incompetent; the books themselves being the best evidence. We also held that while the ruling was erroneous it was not prejudicial, and therefore afforded no sufficient reason for reversing the judgment. Our holding was placed on the ground that Mr. Hitchcock was familiar with the business of the plaintiff company and knew from sources independent of the books the amount of its receipts and expenditures; that his testimony from an abstract made up from the books was more for the purpose of perfect accuracy. He testified: "I know the volume of business transacted by the company, and I know it from constant management of the business and control of it, and also from constant inspection of the books which record the transactions." It is

said: "Our view of the matter is that the credibility and worth of the evidence does not depend alone upon the books of account, or the memoranda used by the witness, but also upon his independent knowledge of the facts to which he testified." It is this feature of the case that seems to require a more exhaustive consideration and analysis of the evidence in relation thereto than heretofore given. The right to a recovery of substantial damages for the wrongful publication of the libelous article was relied on by the plaintiff principally on the proposition that it suffered a material loss of advertising patronage as a result of and because of such publication; that advertisers with whom it had held time contracts for advertising for different periods, at the expiration of the contracts then in force ceased to renew, and others were prevented from entering into any new advertising arrangements, all because of and as a direct result of the publication of the article made the foundation of the suit. To sustain its cause of action, the plaintiff offered in evidence testimony of the nature, extent and value of the business it was and had been doing for several years prior thereto, and entered into comparisons as to the general increase of the business from year to year until the time of the publication; and that after the article was published the business ceased to increase, but remained stationary. Evidence was also offered showing or tending to show that the advertising branch of the business had sustained a marked loss or decline in the amount of advertising done the succeeding ten months compared with the same period preceding as a result of the wrongful publication. In line with the evidence of the character and for the purpose mentioned, there was offered and admitted in evidence a comparative table made up from the books of the plaintiff company, showing the comparative receipts of cash for advertising purposes for the first five months of the years 1895 and 1896, the libelous publication having been made in October, 1895. On motion of the defendant the statement thus prepared and introduced in evidence was stricken out and

withdrawn from the consideration of the jury as being incompetent, and not the best evidence. The witness, Mr. Hitchcock, who had been testifying regarding the subject, was also asked, regarding the same matter, other questions, to which answers were given as follows:

Q. Since the recess of the court, have you prepared a computation, Mr. Hitchcock?

A. Yes, sir.

Q. From that computation are you able to state whether or not the business fell off in the twelve months following October 3, 1895?

A. Yes, sir.

Q. How much did the business fall off during that time?

The witness was here cross-examined by opposing counsel, by which it was shown that the figures to which the witness was testifying were taken from the books of the company—the advertising register,— and an objection on that ground was interposed which was overruled. The witness was then asked:

Q. How much did the business fall off in that time?

A. It fell off $6,735. I am now referring to the earning from commercial advertising.

It is this evidence which it is earnestly contended by counsel for the defendant was admitted erroneously, and to the defendant's prejudice. There is, we think, as held in the former opinion, no escaping the conclusion that the evidence is incompetent, and the question is resolved to the one proposition of whether its admission, when considered in connection with the other evidence in the case, worked a prejudice to the rights of the defendant. A critical analysis of the evidence discloses that with the evidence contained in the comparative statement heretofore referred to which was withdrawn from the jury and the incompetent testimony under consideration as to the loss of advertising patronage eliminated from the case, there is no evidence of a falling off of advertising business or any other loss or diminution of the plaintiff's business,

which the jury might be warranted in attributing to the publication of the libelous article, except in a negative sense; that is, it is in evidence that the business had been steadily increasing for several years on an average of about ten per cent. a year, until at the time the article was published, when plaintiff was doing an annual business of about $180,000 to $190,000. After the publication of the libel the growth or increase of the business was checked, and for the succeeding ten months the volume of business was substantially the same as for a similar period prior thereto. In other words, the business, after the publication, ceased to grow, but maintained itself in the position it had attained at that time. Mr. Hitchcock, who was familiar with the business in its main features, also testified that the growth and expansion of the business had steadily and continuously increased for several years preceding in about the same average per cent., and that at the time referred to it was a profitable enterprise, doing a paying business, the receipts of which exceeded its expenditures, and that in all respects it was a progressive, going concern. The testimony of the same witness shows that in circulation the paper had, after as before the time of the publication of the libelous article, greatly increased, and continued in that respect to thrive without apparently any baneful effect from the derogatory statements of its business rival. Evidence was also adduced showing that in the business or advertisement department from a special source a large amount of advertising came to the plaintiff because of its designation as the paper in which to publish certain legal notices required of applicants for license to sell intoxicating liquors under the laws of the state; that the receipts from this character of advertising were near the sum of $2,500, and to that extent lessened, apparently, the natural and inevitable loss which it is claimed resulted from the wrong actions of the defendant. The above and foregoing covers substantially all the evidence introduced for the purpose of proving the pecuniary loss sustained by the plaintiff

as the result of the libelous publication. The verdict of
the jury finding the amount of damages sustained was in
response to and rested upon evidence including that held
incompetent, of which the foregoing is a fair epitome.

The plaintiff grounded its right to recover for the libel
sued on almost entirely on the injury sustained and dam-
age done to its commercial or advertising business. No
damage was claimed to have been suffered by reason of
loss of subscribers or decrease in circulation. That branch
of the business apparently had continued to increase in
a satisfactory manner. The entire business according to
Mr. Hitchcock's testimony was maintained at its custo-
mary level, and without decrease, solely because the cir-
culation increased at a rapid and satisfactory rate. In-
ferentially, had it not been for the continued growth in
the circulation department, an actual loss and diminish-
ing of the gross receipts would have been the result. The
relative importance of the commercial or advertising and
circulation departments does not appear from the evi-
dence; neither does it appear what proportion of the busi-
ness done succeeding the publication was what might be
denominated new business occasioned by the expansion
in the subscription or circulation department. It appears
reasonably clear from the competent evidence in the case
that the business of the plaintiff was materially affected
by the publication of the libel complained of, but there is
no evidence tending to show with any degree of certainty
any actual loss sustained in any department of plaintiff's
business aside from the incompetent evidence as to the
loss in commercial advertising. The only legitimate con-
clusion fairly inferable from the competent evidence is
that, while the business had been gradually expanding
from year to year at an average per cent. of increase of
about ten per cent. until it did an annual business in vol-
ume of about $180,000 to $190,000, and that after the pub-
lication of the article complained of its growth was re-
tarded or checked and remained practically stationary
from that time to the time of the trial. While the jury

were perhaps justified from the evidence in returning substantial damages for the loss sustained in commercial advertising, eliminating entirely the incompetent evidence, the amount thereof is more or less problematical, and must be left to the good judgment and sound discretion of the jury. The damages returned by the verdict of the jury, or the lesser amount as fixed by the filing of a remittitur, can hardly be said to be conclusively established by the competent evidence. It is regarding a matter about which different minds might very reasonably, and probably would, differ to a considerable extent. The incompetent evidence was allowed to go before the jury as worthy of the same consideration and entitled to the same weight as evidence unquestionably admissible. On the theory of damages suffered by plaintiff on which the case was tried and under the evidence the jury were specially and particularly interested in any evidence from which an intelligent judgment could be formed as to the damage the plaintiff suffered by reason of loss in advertising patronage. Any evidence before them throwing light on the question would, in all reasonable probability, be seized upon for the purpose of returning a satisfactory answer to the inquiry and arriving at a correct verdict. Counsel for plaintiff, realizing the importance of evidence of this charcter, sought in the first instance to introduce a comparative table showing the decrease following the libel of this branch of plaintiff's business, and subsequently showing exactly the loss in such receipts for a certain period of time after the publication of the libel compared with the same period prior thereto. This evidence was based on an examination of the books of the company showing the receipts from advertising sources for the period covered by the evidence. No other evidence was introduced from which a loss in any particular sum could be inferred. The witness appears to be well informed as to the general business of which he was the general manager and principal proprietor, and as to the volume of business could speak with almost the same ac-

curacy as the books of the concern themselves. But as
to the different branches of the business—the circulation
and advertising departments, and the receipts and expen-
ditures of each—he was not so well informed, and was
compelled to fall back upon an examination of the books
for the details testified to regarding such matters. The
importance of the evidence is made manifest and empha-
sized by the contention of counsel to the effect that the
books were so numerous and voluminous that testimony
of one who had examined them, as to the result of such
examination, was admissible without the introduction of
the books. This seems to have been the view entertained
by the trial court in admitting the testimony under con-
sideration. In the former opinion, however, this view of
the law was held erroneous, and numerous well-consid-
ered cases cited in support thereof, and of the correctness
of the ruling there exists no serious doubt.

An examination of the authorities as to the admission
of incompetent evidence establishes the rule to be that, if
such evidence may have entered into the deliberations of
the jury, and affected the result as shown by the verdict,
the error will be regarded as prejudicial, requiring a re-
versal of the case. Or, stated in another way, when in-
competent evidence has been admitted, it must affirm-
atively appear from the record that no prejudice to the
adverse party resulted therefrom. Says Judge COBB, in
*Harrison v. Baker,* 15 Nebr., 45: "While we may not be
able to see what particular effect this testimony had upon
the jury, it was well calculated to divert their minds from
the true issue involved in the case, and it was the right
of the defendant to have his case go before the jury with-
out being encumbered with illegal or irrelevant matter."
To the same effect is *Simpson v. Armstrong,* 20 Nebr.,
512; *Darner v. Daggett,* 35 Nebr., 695. In speaking of the
principles applicable to the admission of incompetent evi-
dence the court of appeals of New York (*Coleman v. Peo-
ple,* 58 N. Y., 561) expresses itself as follows: "The rule
undoubtedly is, that when a fact is conclusively proved,

by competent evidence, so that the court can see that no prejudice or injury could possibly have resulted from the admission of incompetent evidence to prove the same fact, its admission will not be cause for interfering with the result or reversing a judgment. * * * The true rule and the only rule that can be sustained upon principle is, that the intendment of law is, that an error in the admission of evidence is prejudicial to the party objecting, and will be ground for the reversal of the judgment unless the intendment is clearly repelled by the record. The error must be shown conclusively to be innoxious"; citing *Vandevoort v. Gould*, 36 N. Y., 639, and *People v. Gonzalez*, 35 N. Y., 49. The supreme court of Iowa, in speaking of the same subject in the case of *George v. K. & D. M. R. Co.*, 53 Ia., 503, 505, gives expression to the rule in the following language: "We can not but conclude the evidence, or probability, is greater that the jury were influenced by the improper evidence, than that they were not. But whether this be so or not, it is entirely clear that it does not appear the illegal evidence was not prejudicial. When such evidence is admitted, which bears upon the issue and questions to be considered by the jury, prejudice must result therefrom unless it can be satisfactorily shown that such was not the case, and this should affirmatively, not negatively, appear. In other words the court must be able to say that it appears no prejudice has been caused by the erroneous ruling, whatever it may be. This we can not say in this case, and, therefore, the result is the judgment below must be reversed."

The courts are practically of one mind on the question, and it would serve no useful purpose to multiply authorities. In the case at bar there is probably no contention on the part of any as to the soundness of the rule we have spoken of with reference to the admission of incompetent evidence. The only difficulty we encounter is in making a proper application of the rule under the record before us. The incompetent evidence was on a vital point in the case. It was pertaining to and had reference to that

branch of the plaintiff's business which it was claimed was especially impaired by the publication of the libel on which the action is founded. All' the evidence tending to prove pecuniary loss as a result of the publication was directed to the loss and diminution of the business pertaining to commercial advertising. The damage alleged to have been suffered by plaintiff was because of loss in this department. All the evidence tending to prove damage in this regard was doubtless urged upon the jury as the basis for a verdict for damages in a substantial sum as the natural and approximate result of the libelous publication. The loss in advertising patronage, as ascertained from the books of the plaintiff, was given with precision and in such manner as to impress the jury with the truthfulness of the statement. No other evidence was before them showing any loss except such inferences as might be warranted from the evidence tending to prove that after the publication the business ceased to increase as it had before; that it remained stationary, the volume being practically the same as before the publication. The testimony of the loss of advertising, being secondary evidence, was, as was held in the first opinion, incompetent. A thorough and critical examination of the record and analysis of the evidence irresistibly leads to the conclusion that it not only does not appear therefrom that the incompetent evidence may not have influenced the verdict, and received weight and consideration from the jury in their deliberations, or that it had no harmful effect in arriving at their estimate of the damages sustained, but, on the contrary, in all reasonable probability this evidence alone was the inducement and principal factor which resulted in the verdict returned. It was upon the incompetent evidence that the jury in all probability acted in fixing the amount which the plaintiff ought to recover. We are unable to say that the amount of damages suffered by plaintiff for which judgment has been rendered is conclusively established by the other evidence in the case. We do not say that upon the evidence, eliminating that

which is incompetent, a verdict might not be sustained, but from a careful inspection of the record we are driven to the conclusion that the incompetent evidence was in all probability an important and overshadowing consideration in the deliberation of the jury, and materially entered into and affected the verdict by them returned. The other evidence bearing on the same point not being of a conclusive nature, and not determining with any degree of certainty any specified sum as the amount of damages sustained, the question is an open one for the jury, and it is for them, in the exercise of sound judgment and discretion, within the limits of the evidence, to allow such damages as they believe will fairly compensate plaintiff for the pecuniary loss sustained. What sum the jury would have fixed in the absence of the incompetent evidence we can not say. Certainly, we are not warranted in saying that it would have been the same sum had the incompetent evidence not been admitted. It logically and necessarily follows that the judgment, by the application of the principles governing the admission of incompetent evidence heretofore adverted to, can not be upheld.

It is contended by counsel for plaintiff that no objection was interposed to the question by which the incompetent evidence was elicited, and therefore defendant is not in a position to predicate error on the admission of the same. The record discloses that when the question was asked, as heretofore quoted, defendant's counsel examined the witness as to his source of knowledge as to the amount the advertising had fallen off, and showed by such examination that the witness was testifying to figures or "footings" obtained by him from the advertising register and from a private memorandum which he kept for his individual use, which was also made up and taken from the same book, which contained an account of the monthly receipts for advertising of all kinds, both before and after the publication of the libel, the difference being testified to as the loss from commercial or advertising patronage. An objection was then interposed on the

ground that the testimony was incompetent, and not the best evidence, and because the books, while in the jurisdiction, and convenient to the court, were not brought into court, and introduced as the best evidence of their own contents. The objection was overruled, and the question repeated and answered without further objection. We think the answer comes clearly within the objection and the exception to the ruling thereon. The question was asked, witness cross-examined regarding the source of his information, and objection to the question interposed, an adverse ruling had, and exception taken. The question was repeated for the benefit of the witness, and for the purpose of obtaining an answer to the question objected to, after a ruling had been obtained on the objection. It would not only have been a useless, but a needless interruption in the trial of the case to renew the objection to the same question immediately after the ruling and before any other testimony was taken. It seems to us entirely clear that the objection was interposed and a ruling had regarding the admissibility of the very evidence testified to by the witness after the question was repeated. There is nothing which would warrant us in saying that counsel had changed his mind regarding the evidence, and did not desire to further object. He had objected to the extent of his ability. He had noted his exception. He did all that he could to preserve his record and present the ruling complained of to a reviewing court, and anything further would have been needlessly encumbering the record. The objection interposed is sufficient to present the ruling thereon and the admissibility of the evidence for review. *Gilpin v. Gilpin,* 12 Colo., 504; *Graves v. People,* 18 Colo., 170; *Sharon v. Sharon,* 79 Cal., 674; *Dilleber v. Home Life Ins. Co.,* 69 N. Y., 256, 260; *Carlson v. Winterson,* 147 N. Y., 652, 656.

The order of affirmance heretofore entered is vacated, the judgment reversed and the cause remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.

Reynolds v. First Nat. Bank of Wymore.

SULLIVAN, J., dissenting.

I have no doubt at all about the correctness of the conclusion reached when the case was first submitted. If the undisputed testimony of Mr. Hitchcock, with respect to his knowledge of the plaintiff's business, is to be taken as true, then the approximate loss of commercial advertising sustained by the plaintiff in the year following the publication of the libel, is conclusively established by competent evidence. I see no reason to suppose that the witness did not have the knowledge which he professed to have. Neither do I discover any reason for holding that the loss of advertising patronage should have been proved with precision and exactitude. Rejecting entirely the testimony, to the extent that it is based on the books, and there remains uncontradicted evidence of the approximate amount of the plaintiff's loss.