WILLIAM A. BIGLEY, APPELLEE, V. NATIONAL FIDELITY & CASUALTY COMPANY, APPELLANT.

FILED DECEMBER 24, 1913.   No. 17,268.

1. **Libel: WRITING LIBELOUS PER SE.** In an action for libel, language in the alleged libelous publication which, under the circumstances and in the connection in which it is used, would, by persons of ordinary intelligence and prudence, be understood to charge the commission of a crime is libelous *per se*, although if stated entirely by itself it might not be technically so construed.

2. ———: **JUSTIFICATION.** The language contained in a letter may be libelous *per se*, and the writing and publication of the letter not constitute a libel. If it charges a crime and is therefore libelous *per se*, still, if it is true of the plaintiff, and is written and published with good motives and for justifiable ends, it is not a libel of the plaintiff.

3. **Appeal: INSTRUCTIONS.** If the instructions as a whole correctly state the law, the judgment will not be reversed because of illogical arrangement of the several instructions, if it appears from the whole record that the jury were not misled thereby.

4. **Libel: EVIDENCE.** In an action for libel, it is not competent to prove wide and general circulation of the libel for the purpose of establishing the falsity of the charge or that the defendant was responsible for the libel.

5. ———: **PUBLICATION.** One who publishes a libel is responsible for such distribution and general circulation thereof as is the natural result of his act, such as under the circumstances he might reasonably suppose would follow as a result of the publication. He is not liable for an independent subsequent publication of a similar libel not induced by his own act.

6. ———: ———: **QUESTION FOR JURY.** If it clearly appears that the publications complained of were such independent publications, the evidence thereof should be excluded by the court. If it appears that the facts from which it might be determined whether the defendant was responsible for the publications are in doubt, and the evidence upon that point is substantially conflicting, the question whether the defendant is responsible for such publications should be submitted to the jury under proper instructions.

7. ———: **DAMAGES: AMOUNT.** The evidence as to plaintiff's damages is found sufficient to justify the amount of the judgment.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Affirmed.*

*E. J. Hainer* and *De Bord, Fradenberg & Van Orsdel,* for appellant.

*George W. Berge, contra.*

SEDGWICK, J.

This plaintiff was in the employ of the Burlington railroad working in the shops at Havelock as a boiler-maker. He was also in his spare hours a solicitor of insurance, acting as such for the defendant company, and to some extent for other companies. He also collected money from policy-holders in the defendant company. In December, 1909, George W. Wolfle, who was manager of the accident department of the defendant company, wrote letters to various policy-holders at Havelock, which purported to be letters from the defendant company, and to which Mr. Wolfle signed the name of the company by himself as manager. Those letters were, in substance, as follows: Omaha, Nebr., Dec. 18, 1909. Mr. Nelson B. Eshom, Havelock, Nebraska. Dear Sir: You are hereby notified to pay all premiums, when due, to Mr. Cuthbert Ayre, at the boiler-shops in Havelock, or to Mr. Frank L. Marstellar, Manager of the Lincoln Agency, Room 18, Burlington Block, Lincoln. You are also advised that Mr. Bigley is no longer an agent of this company. He has collected premiums from policy-holders in Havelock and retained the money for himself. Thanking you for your patronage and assuring you that both Mr. Ayre and Mr. Marstellar will endeavor to give you the best of service, we are, very truly yours, National Fidelity & Casualty Co. Geo. W. Wolfle, Manager Accident Department.

The plaintiff brought this action in the district court for Lancaster county, alleging damages for libel in writing and publishing these letters. The jury returned a verdict in favor of the plaintiff for $4,000 damages. The

court required a remittitur of $1,000, and entered judg-
ment upon the verdict for $3,000. From this judgment
the defendant has appealed.

The defendant denied that Mr. Wolfle "was expressly
or impliedly authorized to write said letters or to state in
said letters, in substance, that the plaintiff had collected
premiums from policy-holders in Havelock and retained
the money for himself." The defendant also contended
that the letters were not libelous *per se,* and that they
were privileged, and also contended that the charge con-
tained in the letters against the plaintiff was true. The
statement in the letters, "He has collected premiums from
policy-holders in Havelock and retained the money for
himself," if stated entirely by itself, would not technically
charge the defendant with embezzlement, since it does not
state that the money was wrongfully retained or that it
was retained without the consent of the company. How-
ever, under the circumstances and in the connection in
which it was made, the language used would not ordinarily
be understood with any other meaning than that the plain-
tiff had unlawfully appropriated the defendant's money to
his own use. The language used, then, was libelous *per
se,* and the trial court correctly so considered it.

In the first instruction given by the court to the jury
the court stated: "In this case the plaintiff seeks to
recover from the defendant for certain libelous language
used in a letter sent by the defendant to people in Have-
lock." The court then in the same instruction stated the
definition of libel, which, if we understand the defendant,
is conceded to be substantially correct; but the defendant
says in the brief: "The jury in effect are told that the
defendant has been guilty of using libelous language of
the plaintiff; in other words, that the defendant has
libeled the plaintiff, and then the definition giving in full
what constitutes libel is certainly prejudicial to the de-
fendant in this case, as it defines libels of many kinds in
no way applicable to this case, and the statement that the
defendant has used libelous language of and concerning

the plaintiff is certainly prejudicial." The instruction does not merit this criticism. The language contained in a letter may be libelous *per se,* and yet the writing and publication of the letter may not constitute a libel. If the language charges a crime and is therefore libelous *per se,* still if it is true of the plaintiff, and is written and published with good motives and for justifiable ends, the writing which contains it is not a libel. We have seen that the court was right in characterizing the language used as libelous *per se.* It would perhaps have conveyed a clearer idea to the jury if, instead of giving technical definition of libel, the court had in that connection told the jury in plain words under what circumstances language libelous *per se* would or would not constitute a libel against the plaintiff for which he could recover; but if the definition of libel given by the court was not in itself erroneous, and the jury in another instruction were informed under what circumstances the defendant would be liable for publishing the libelous language, we cannot say that the jury were misled by this instruction.

As to the truth of the language complained of, the evidence is somewhat conflicting. The burden of establishing the truth was upon the defendant, and the defendant not only fails to establish the truth of this allegation by a preponderance of the evidence, but it appears that the evidence clearly preponderates against the defendant upon this proposition. Mr. Wolfle's duties were in the principal office of the defendant, which was in Omaha. Mr. Marstellar was the local agent for the company at Lincoln, and was the plaintiff's superior in the business. The premiums were generally collected from the policy-holders at Havelock, and usually Mr. Marstellar went there for that purpose. Mr. Morrison was a policy-holder, and it appears that three premiums upon his policy, amounting to $6, were not received at the company's office in Omaha. Mr. Marstellar testified that these premiums were paid to the plaintiff, and that he had several times called the plaintiff's attention to the matter

and the plaintiff had not paid the money over to him. The plaintiff testified, and he was entirely corroborated by Mr. Morrison, that when the Morrison premiums were paid the plaintiff and Marstellar were together at a pool-hall in Havelock; that they were making these collections jointly. One of them received the money from the policy-holder and the other noted the receipt on a sheet of paper which they had for that purpose, and when the collections were completed the money and papers were turned over to Mr. Marstellar. It would seem from the whole evidence upon this point that between these two men some mistake was made in keeping their account and that this resulted in the failure to properly remit the money.

The defendant having admitted the writing and publication of these letters, even if the jury should find that the libelous language contained in the letters was true of the plaintiff, the defendant would be liable, unless it could establish by a preponderance of the evidence that the letters were published with good motives and for justifiable ends. It is insisted that this question was not properly submitted to the jury. In this connection it is said in the brief that the court instructed the jury, using Latin expressions which could not be understood by the jury. In the fourth instruction the court stated fully to the jury the question whether Mr. Wolfle, in writing and publishing the letters, was acting within the scope of his employment, and then said: "If you find from the evidence that said Wolfle was acting within the scope of his employment, then you are instructed that the letters taken as a whole are libelous *per se*. This being true, the law presumes that the libel is false; that the defendant in writing and in sending out the letters acted maliciously, and that the plaintiff has been damaged by the circulation of said letters." It was not so important that the jury should understand the meaning of the Latin words *per se,* as it was that they should know what issues remained for them to determine. They were still to determine whether the defendant was responsible for the letters, and,

55

if so, whether the charge made against the plaintiff was
true or false, and, if true, whether it was made by defend-
ant "with good motives and for justifiable ends." The
plaintiff had the burden of proof that the defendant was
responsible for the letters, and the defendant had the
burden as to the truth of the matter charged and that it
was published with good motives and for justifiable ends.
When the court told the jury that the law presumed that
the libel was false; that the defendant, in writing and in
sending out letters, acted maliciously, and that the plain-
tiff had been damaged by the circulation of said letters, it
would have been better if in that connection the court had
also told the jury that this was only a presumption of fact
and merely meant that the burden of proof as to these
matters was upon the defendant, so that, if they found
from the whole evidence that the matters charged against
the plaintiff were true and were with good motives and
for justifiable ends, they must find for the defendant. But
this was, in substance, told the jury in another instruc-
tion, and we cannot find that the jury must have been
misled by the instruction complained of.

Complaint is made of the amount of damages allowed
by the jury. In this connection it is claimed that incom-
petent evidence was admitted affecting the measure of
damages. The petition named six policy-holders of the
defendant company, each of whom had received a dupli-
cate of this letter. The evidence tended to show that
others had received the same letters also. There were
from 500 to 600 employees in the shops where the plaintiff
worked. The plaintiff testified that, immediately after
these letters were received by the various policy-holders,
some of them showed the letters to the plaintiff, and that
the matter became a general subject of discussion and
remark among the employees of the shops and other per-
sons with whom the plaintiff had been doing business.
Other witnesses were called by the plaintiff, and over the
objection of the defendant were allowed to give similar
testimony. The defendant now insists that this testimony

was highly prejudicial, and was incompetent and ought not to have been received. Of course, such evidence would not be competent for the purpose of proof that the defendant had made the charge against the plaintiff as alleged. It could be competent only for the purpose of throwing light upon the extent of the plaintiff's damages. For this purpose it would not be competent to show that some other person had independently published the same or a similar statement concerning the plaintiff. In *Schmuck v. Hill*, 2 Neb. (Unof.) 79, it was held that "one who publishes a libel is liable for any subsequent publications which are the natural result of his acts," and this was repeated in *Fitzgerald v. Young*, 89 Neb. 693. The question is whether these conversations and discussions among the shopmen and others, which were in reality subsequent publications of the same statements, were the natural results of the defendant's act in sending these letters to the policy-holders. If they were not, but were clearly independent libels, the evidence should be excluded by the court. If the question whether they were the natural results of the act of the defendant was not clear, so that reasonable minds might differ as to whether they were or were not, then the evidence should be received and should be submitted to the jury upon proper instructions by the court. We think that under the circumstances in this case it was not erroneous to submit this question to the jury.

It is insisted that in any event the judgment is excessive and is not warranted by the evidence. The plaintiff, in his regular employment as a boiler-maker, has for many years received the compensation of 39 cents an hour and has generally earned a little more than $80 a month. He had been acting as solicitor of insurance for this defendant and other companies for about six months when these letters were published. There is no evidence as to the amount of his profits in this employment except that of the plaintiff himself. He testified that from his business as insurance solicitor he realized from $150 to

$200 a month, and that after the publication of these letters this business was substantially destroyed. He was living with his family, his wife and one child, and he tesfies to the injury that he sustained in his business and social relation and in other ways. There is no absolute test of damages suffered under such circumstances and it is very difficult to determine the extent of the injury inflicted. The amount of this verdict, even after the remittitur was required by the trial court, seems large, but it is not impossible that the plaintiff has been damaged to the amount of this judgment. It is peculiarly a matter for the jury to determine, and while, of course, there is a limit beyond which the jury could not be allowed to go, the court cannot interfere with their verdict in such cases, unless it clearly appears that the verdict was induced by passion or prejudice or some consideration other than the evidence in the case. With some hesitation we have concluded that we are not justified in interfering with the verdict on those grounds, and the judgment of the district court is therefore

AFFIRMED.

LETTON, FAWCETT and HAMER, JJ., not sitting.