JOAN HECKES, THROUGH AND BY HER MOTHER AND NEXT FRIEND, FRIEDA HECKES, APPELLANT, V. FREMONT NEWSPAPERS, INCORPORATED, APPELLEE.

13 N. W. 2d 110

FILED FEBRUARY 9, 1944. No. 31730.

*Boyle & Boyle,* for appellant.

*Sidner, Lee & Gunderson, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, YEAGER, CHAPPELL and WENKE, JJ.

YEAGER, J.

This is an action instituted in the district court for Dodge county, Nebraska, by Joan Heckes, by her mother and next friend, plaintiff and appellant, against Fremont Newspapers, Incorporated, defendant and. appellee. The action is in damages for libel. A general demurrer to plaintiff's petition on the ground that it did not state a cause of action was sustained and the petition was dismissed. From this action of the court plaintiff has appealed.

The only question before this court is that of whether or not the petition states a cause of action. The portion of the petition necessary to be examined in order to determine whether or not it states a cause of action is the following:

"That in the Thursday, September 18th, 1941, issue of said Fremont Daily Tribune, the defendant, Fremont Newspapers, Incorporated, published on page 10 thereof the following false, libelous and defamatory matter of and concerning Joan Heckes, to-wit:

"Public Notice

"I will not again pay for any more bills or debts for either Mrs. Frieda Heckes or her daughter, Joan, for money, foods, clothing, university expenses, doctor bills, drugs, liquor, cigarettes, hotel or cabin camps, transportation to or from Florida, or any other bills of any nature again.

"Lovane L. Fitzsimmons

"That said articles was presented for publication to the said Fremont Daily Tribune by one Lovane L. Fitzsimmons, who was the author of said article. That said article, herein referred to, was thereafter by the defendant, Fremont Newspapers, Incorporated, printed, published and circulat-

ed, as hereinbefore set forth, to-wit: on September 18th, 1941.

"That the said Lovane L. Fitzsimmons is not related in any degree, either by blood or affinity, to the said Joan Heckes, nor was the said Lovane L. Fitzsimmons ever under any legal or moral obligation to support, maintain or educate the said Joan Heckes, nor was the said Lovane L. Fitzsimmons ever, legally or morally, obligated to pay any debts, obligations or financial responsibilities incurred by the said Joan Heckes, all of which facts were known to the defendant, Fremont Newspapers, Incorporated, at the time said false, libelous and defamatory article was published.

"That the article herein referred to, as published by the defendant, Fremont Newspapers, Incorporated, was circulated in the State of Florida and after said publication and circulation the same became a part of the permanent records in the circuit court in and for Polk County, Florida. That said article was published and circulated in the city of Lincoln, Nebraska, where the University of Nebraska is located and which institution this plaintiff was attending at the time said article was so published and circulated. That as a direct result of said publication, the said plaintiff, Joan Heckes, was compelled to and did discontinue her connection with said University as a student and ever since said date has been denied the opportunity of receiving a higher education. That before attending said University, the said plaintiff graduated from the Fremont High School in June, 1941.

"That by reason of the publication by the defendant of the foregoing false, defamatory, malicious and libelous article, plaintiff has been held up to public contempt, ridicule, ignominy, shame and disgrace. Her reputation and good name has been destroyed and she has suffered and ever will suffer mental pain, anguish and emotional distress. She will be shunned and avoided; will be denied the privilege and pleasure of associates heretofore enjoyed, invitations to social functions, and to associate and mingle with many respectable acquaintances and citizens of Nebraska and

elsewhere. She has been greatly injured and damaged in her social standing and relations; has been made the subject of sensational talk and comment and ridicule; has been looked upon and discussed as a kept woman, a person of loose morals; as one addicted to the use of drugs, intoxicating liquors; a frequenter of cabin camps, hotel rooms; as one who was receiving and taking money for her education at the University; as one whose doctor bills were being paid; as one who had the authority and did contract bills and debts and charged them to the account of the said Lovane L. Fitzsimmons; as one whose clothing and wearing apparel were paid for by the said Lovane L. Fitzsimmons; as one who was transported in interstate commerce from the State of Nebraska to the State of Florida and from the State of Florida to the State of Nebraska;"

The particular ground on which the demurrer was sustained was that the publication was not libelous *per se.* Counsel for plaintiff agree that if the publication in the light of the other facts pleaded is not libelous *per se* the demurrer was properly sustained.

It will be noted that the petition alleges that Lovane L. Fitzsimmons, the author of the published statement and the person who tendered it for publication, was in nowise related to plaintiff or her mother and in nowise obligated to provide any of the items mentioned in the publication.

The effect of the demurrer was to admit the truth of these allegations as well as to admit the publication and the untruth of its statements and the implication flowing naturally or *per se* from it. With this as a basis and a starting point this court is called upon to determine whether or not the publication is libelous *per se.*

In a number of cases this court has established standards whereby to determine whether or not a publication is libelous *per se.* In *World Publishing Co. v. Mullen,* 43 Neb. 126, 61 N. W. 108, it was said: "The question here then is, what is the plain import, the ordinary meaning of the language of the article published? What would ordinary men of ordinary common sense understand from reading this article?"

And again in the same opinion it is stated: "The rule is that any language the nature and obvious meaning of which is to impute to a person the commission of a crime, or to subject him to public ridicule, ignominy, or disgrace, is actionable of itself."

In *Williams v. Fuller*, 68 Neb. 354, 94 N. W. 118, it is said: "Any false and malicious writing published of another is libelous *per se*, when its tendency is to render him contemptible or ridiculous in public estimation, or expose him to public hatred or contempt, or hinder virtuous men from associating with him." See, also, *Sheibley v. Huse*, 75 Neb. 811, 106 N. W. 1028; *Dalton v. Woodward*, 134 Neb. 915, 280 N. W. 215; *Nelson v. Rosenberg*, 135 Neb. 34, 280 N. W. 229.

Measured by these standards is there anything in this publication which would have a tendency obviously to subject plaintiff, in the eyes of ordinary men or women, to ridicule, ignominy or disgrace or to render her contemptible or ridiculous in public estimation or expose her to public contempt or hinder her in her associations with her fellow creatures?

If the publication had been limited to an inferential declaration that Fitzsimmons had previously furnished money for or defrayed expenses for those things necessary to normal living such as food, clothing, university expenses, doctor bills and drugs, it would be as easy to attribute to him charitable motives of which he had recanted as of ulterior motives and designs and on that basis conclude that no *per se* harm could flow from the publication, but when in addition a necessary implication is found that liquor, cigarettes, hotel and cabin camps and cost of transportation over great distances were supplied, we think the publication, by its terms, is calculated to throw upon this girl an opprobrium which even those of liberal thought or even of callous mind would conclude would cause this girl to suffer ignominy, ridicule and contempt at the hands of at least that portion of the public which holds to the moral and ethical view that indulgence in the use of intoxicating liquor and the accept-

ance of large intrinsic favors from men outside the relationship of blood or marriage are tokens of disrepute.

It is not difficult to believe, in fact it appears reasonably certain, that on reading by them of the publication, the associates of plaintiff at the University would attribute something of disrepute to her and in consequence in some measure avoid her society. It would be idle to attempt to conjecture the number of groups in Fremont society where this publication was the conversational piece de résistance but doubtless there were many, and who will say that the consequences were not detrimental to the standing of plaintiff in the community? Who would say that mothers and fathers in the Fremont community, adhering to the accepted precepts and traditions of polite society and having sons or daughters accustomed to the society of this girl, would not on reading this statement at least advise and urge against, if not indeed forbid, further association with her?

The foregoing are but a few of many illustrative situations and conditions which could without difficulty and without elasticity of imagination be set forth whereby and whereunder plaintiff would suffer contempt, ridicule and ignominy at the hands and in the eyes of ordinary men and women.

It is our conclusion that the publication which is the basis of the action here is libelous *per se.*

It may well be said that there is an implication that the practices suggested by the publication were engaged in by plaintiff with her mother, but we think this implication fails to remove any of the odium attaching to the daughter. It is but natural and reasonable for persons zealous in adherence to accepted moral and ethical standards to avoid association with a young girl charged with failure to adhere to such standards, and it is likewise a natural and reasonable conclusion that such avoidance would not be decreased by an express or implied charge that the failure of adherence had the approbation of the mother of the girl.

The judgment of the district court is reversed and the cause remanded with directions to the district court to over-

rule the demurrer and to require the defendant to answer the petition.

REVERSED, WITH DIRECTIONS.

MESSMORE, J., participating on briefs.

CARTER, J., concurring.

The explanatory and illustrative matters contained in the opinion are not necessary to determine the effect of the publication. Measured by the standards correctly recited in the opinion, the publication is libelous *per se* and requires no explanation or illustration. For the foregoing reason I concur in the result only.