K CORPORATION, DOING BUSINESS AS THE WESTROADS CLUB,
APPELLANT, V. PATRICK K. STEWART, APPELLEE.

526 N.W.2d 429

Filed January 27, 1995.   No. S-93-431.

Jere M. Knoles for appellant.

Timothy J. Pugh, of McGrath, North, Mullin & Kratz, P.C., for appellee.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, WRIGHT, and CONNOLLY, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

The plaintiff–appellant, K Corporation, doing business as The Westroads Club, alleges in its operative petition that it was libeled by the defendant–appellee, Patrick K. Stewart. The district court sustained Stewart's demurrer and, upon Westroads' election to stand on its petition as pled, dismissed the same. Westroads thereafter appealed to the Nebraska Court of Appeals, whereupon we, in the exercise of our authority to regulate the caseloads of the two appellate courts, removed the matter to this court on our own motion. We now reverse, and remand for further proceedings.

## II. SCOPE OF REVIEW

The question is whether Westroads' petition states a cause of action, that is, whether the events, acts, and things alleged in the petition to have been done or omitted show legal liability on the part of Stewart to Westroads. See, *Merrick v. Thomas*, 246 Neb. 658, 522 N.W.2d 402 (1994); *Wheeler v. Nebraska State Bar Assn.*, 244 Neb. 786, 508 N.W.2d 917 (1993), *cert. denied* ____ U.S. ____, 114 S. Ct. 1835, 128 L. Ed. 2d 463 (1994). Whether a petition states a cause of action is a question of law regarding which an appellate court has an obligation to reach a conclusion independent of that of the inferior court. *Vanice v. Oehm, post* p. 298, 526 N.W.2d 648 (1995); *Gibb v. Citicorp*

*Mortgage, Inc.*, 246 Neb. 355, 518 N.W.2d 910 (1994).

## III. FACTS AS ALLEGED

Westroads asserts that it is in the business of providing a recreational, fitness, and exercise facility for its members and their guests.

According to the petition, Stewart wrote the following letter to Westroads and published the same to certain of Westroads' customers and to one or more members of the public:

Thank you for your letter outlining the terms under which Dawn and I can renew our membership in the Westroads Club. Before doing so, I would like to gain a little more information about the present status and future possibilities of the club.

A critical consideration is the physical deterioration of the club itself. It seems to me very little is being done to improve the quality of the equipment, the furnishing or the general appearance. As a for instance, I would call your attention to the poor condition of the outdoor tennis courts. I have difficulty understanding why it wouldn't be in the best interest of the club and its members to have these courts in first class condition. I think the same can be said for the indoor courts. They barely meet minimum standards.

Another issue is the cleanliness of the club. I was particularly disturbed by the notice from the Omaha Board of Health concerning the pool and hot tub. Most importantly, however, any casual observer of the public rooms, locker rooms or exercise areas can easily note poor sanitary conditions and generally below the minimum acceptable standards of most members.

Finally, there is the question of the financial condition of the club. The best information available to me is that the club is in serious danger of bank foreclosure and barring that may be sold. If it is true, it would certainly explain the lack of investment in improving the club.

My wife and I certainly enjoy the convenience of the club and what it has to offer. I guess our problem is one

of confidence that the club can continue to operate in its present manner and whether indeed in a few months we care to visit. Possibly, one avenue to investigate here is a month to month membership. In that way, the club can benefit from our dues while we can be protected from the clear possibility that the club is about to fail.

(Line numbers supplied.)

The petition further avers that the statements in the foregoing letter are false; that Stewart knew, or should have known, that they were such; and that notwithstanding Westroads' demand, Stewart has failed to correct them. Westroads claims that as a consequence, it has suffered general damages.

## IV. ANALYSIS

There are two types of libel: Words may be actionable per se, that is, in themselves, or they may be actionable per quod, that is, only on allegation and proof of the defamatory meaning of the words used and of special damages. See *Knapp v. Post Co.*, 111 Colo. 492, 144 P.2d 981 (1943). See, also, *Matheson v. Stork*, 239 Neb. 547, 477 N.W.2d 156 (1991); *Schriner v. Meginnis Ford Co.*, 228 Neb. 85, 421 N.W.2d 755 (1988); *Bigley v. National Fidelity & Casualty Co.*, 94 Neb. 813, 144 N.W. 810 (1913); *Boldt v. Budwig*, 19 Neb. 739, 28 N.W. 280 (1886); *Geisler v. Brown*, 6 Neb. 254 (1877).

Having alleged neither the defamatory meaning of the words used nor special damages, Westroads' petition fails unless the contents of Stewart's letter are libelous per se, it having long been the law in Nebraska that a corporation may suffer such injury. See *Bee Publishing Co. v. World Publishing Co.*, 59 Neb. 713, 82 N.W. 28 (1900), *reversed on other grounds* 62 Neb. 732, 87 N.W. 945 (1901). Whether a communication is libelous per se is a threshold question of law for the court. *Wheeler v. Nebraska State Bar Assn.*, 244 Neb. 786, 508 N.W.2d 917 (1993), *cert. denied* ____ U.S. ____, 114 S. Ct. 1835, 128 L. Ed. 2d 463 (1994).

More than a century ago, we established that "any language the nature and obvious meaning of which is to impute to a person the commission of a crime, or to subject him to public ridicule, ignominy, or disgrace, is actionable of itself." *World*

*Publishing Co. v. Mullen*, 43 Neb. 126, 131–32, 61 N.W. 108, 109 (1894). In *Heckes v. Fremont Newspapers, Inc.*, 144 Neb. 267, 271, 13 N.W.2d 110, 112 (1944), we recited the above standard and then quoted *Williams v. Fuller*, 68 Neb. 354, 94 N.W. 118 (1903), for another definition of libel per se: " 'Any false and malicious writing published of another is libelous *per se*, when its tendency is to render him contemptible or ridiculous in public estimation, or expose him to public hatred or contempt, or hinder virtuous men from associating with him.' "

More recently, in *Matheson*, 239 Neb. at 553, 477 N.W.2d at 160–61, we wrote:

> Spoken or written words are slanderous or libelous per se only if they falsely impute the commission of a crime involving moral turpitude, an infectious disease, or unfitness to perform the duties of an office or employment, or if they prejudice one in his or her profession or trade or tend to disinherit one. . . . In determining whether a communication is libelous or slanderous per se, the court must construe the questioned language "in its ordinary and popular sense." . . . Moreover, where a communication is "ambiguous or . . . meaningless unless explained, or . . . *prima facie* innocent, but capable of defamatory meaning, it is necessary to specially allege and prove the defamatory meaning of the words used, and to allege and prove special damages." . . . Further, the circumstances under which the publication of an allegedly defamatory communication was made, the character of the audience and its relationship to the subject of the publication, and the effect the publication may reasonably have had upon such audience must be taken into consideration.

Because in considering a demurrer a court must assume the pleaded facts to be true as alleged, *First Nat. Bank in Morrill v. Union Ins. Co.*, 246 Neb. 636, 522 N.W.2d 168 (1994), the falsity of the contents of the letter is assumed for the purpose of this analysis. However, it is clear Stewart's letter does not impute to Westroads the commission of a crime involving moral turpitude or an infectious disease, nor does the letter tend to disinherit Westroads.

Thus, the ultimate question is whether the letter imputes to Westroads an unfitness to operate a recreational fitness and exercise facility or otherwise prejudices its business operation. As noted in *DeLay First Nat. Bank & Trust Co. v. Jacobson Appliance Co.*, 196 Neb. 398, 410, 243 N.W.2d 745, 752 (1976), quoting *McLaughlin v. Woolworth Co.*, 125 Neb. 684, 251 N.W. 293 (1933):

> "As applied to libel of one in his business or occupation, it is elementary in the law of libel and slander that defamatory words falsely spoken (or written) of a party which prejudice such party in his occupation or trade are actionable per se. . . . The law guards most carefully the credit of all merchants and traders. Any imputation on their solvency, any suggestion that they are in pecuniary difficulties, is therefore actionable; also where any language is used of merchants and tradesmen which imputes a want of credit or responsibility or insolvency, or of common honesty. . . ."

We have also written that falsely stating that a private corporation is in a precarious financial position, is unable to meet its obligations, and is nearing the end of its existence is libel per se. *Bee Publishing Co. v. World Publishing Co.*, 59 Neb. 713, 82 N.W. 28 (1900), *reversed on other grounds* 62 Neb. 732, 87 N.W. 945 (1901).

However, it is the natural and obvious meaning of the language which must be libelous per se. *Matheson v. Stork*, 239 Neb. 547, 477 N.W.2d 156 (1991); *Hennis v. O'Connor*, 223 Neb. 112, 388 N.W.2d 470 (1986); *Rhodes v. Star Herald Printing Co.*, 173 Neb. 496, 113 N.W.2d 658 (1962), *cert. denied* 371 U.S. 822, 83 S. Ct. 39, 9 L. Ed. 2d 62; *Tennyson v. Werthman*, 167 Neb. 208, 92 N.W.2d 559 (1958); *Rimmer v. Chadron Printing Co.*, 156 Neb. 533, 56 N.W.2d 806 (1953); *Barry v. Kirkland*, 149 Neb. 839, 32 N.W.2d 757 (1948); *Mullen, supra*. If innuendo or explanation is necessary to make a statement clear and understandable, then it is not per se actionable. *Rhodes, supra*; *Hudson v. Schmid*, 132 Neb. 583, 272 N.W. 406 (1937). Further, if the language is meaningless or ambiguous, or prima facie innocent, but capable of defamatory meaning, then it is not actionable per se, and one

must allege and prove special damages. *Hudson, supra.* The language must be naturally and presumably understood in its defamatory meaning. *Id.*

It also becomes appropriate at this point to recall that although the false assertion of a fact may be libelous even though couched in terms of an opinion, statements which cannot be interpreted as stating actual facts are entitled to First Amendment protection. *Wheeler v. Nebraska State Bar Assn.,* 244 Neb. 786, 508 N.W.2d 917 (1993), *cert. denied* ____ U.S. ____, 114 S. Ct. 1835, 128 L. Ed. 2d 463 (1994). The test in this regard is whether a reasonable fact finder could conclude that the statement implies a provably false factual assertion. *Wheeler, supra.* In assessing the objectivity and verifiability of a statement, all surrounding circumstances are to be considered, examining first the language of the statement and then the context in which it was made. *Id.* See, also, *Matheson, supra.* Thus, a court looks at the nature and full content of the communication and to the knowledge and understanding of the audience to whom the publication was directed, considering the specificity of the statement, its verifiability, the literary context, and the broader setting in which the statement appears. *Wheeler, supra.* See, also, *Matheson, supra.*

With that background, we proceed to a consideration of the Stewart letter, the relevant portions of which fall into two broad categories, one dealing with Westroads' fitness to operate its facility and the other with its financial condition.

## 1. FITNESS TO OPERATE FACILITY

Lines 6 through 22 of the letter comment unfavorably on Westroads' fitness to operate its facility.

Construed in their ordinary sense, the statements in lines 6 through 15 are critical of the facility and disparaging of Westroads' business methods and management. But not entirely so, for in the end, Stewart concludes that although they barely do so, the conditions of the club do meet minimum standards, whatever those standards may be. Indeed, the fact that the letter does not attempt to objectively define what constitutes an unacceptable level of deterioration, what constitutes acceptable quality, or what distinguishes first class condition from any

other kind of condition makes the statements in that regard not expressions of verifiable facts, but only expressions of Stewart's subjective impressions. Just as the subjective evaluations of a judge's qualifications were not libelous per se, *Wheeler, supra*, neither can the subjective evaluations of Westroads' condition be libelous per se.

While the same analysis applies to much of the statements dealing with the cleanliness of the facility made in lines 16 through 22, the analysis does not apply to all that is written in those lines. By referring to the reactions of a casual observer and the minimum acceptable standards of most members, Stewart has taken all but the statements concerning the notice from the Omaha board of health out of the realm of verifiable factual statements and made them nothing more than subjective evaluations.

However, read in the literary context of the entire letter, the statement about the notice from the board of health can only be understood to mean that the pool and hot tub were found by the board to have been unclean. Neither Westroads' members nor the public at large can be assumed at this point to have knowledge about contacts between the board and Westroads. Thus, if the statement about the notice is false as alleged, then the statement is libelous per se, for it imputes to Westroads an unfitness to operate its facility.

## 2. FINANCIAL CONDITION

Although that determination necessarily means that the judgment of the trial court is erroneous and must be reversed, because we order further proceedings, we also consider the remainder of the letter, lines 23 through the first two words of line 33. All that is there written about Westroads' financial condition is predicated by Stewart on the truthfulness of what he describes as the best information available to him. By thus calling the truthfulness of that information into question, the statements become nothing more than expressions of Stewart's subjective concern. Those statements thus cannot be libelous per se.

## V. JUDGMENT

For the foregoing reasons, the judgment of the district court

is reversed and the matter remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

LANPHIER, J., not participating.