TERRY WHITE, BETSY E. BREWER, AND RITA SMAILYS, APPELLANTS, V. ARDAN, INC., AND GARY CURL, APPELLEES.

430 N.W.2d 27

Filed September 30, 1988.   No. 86-791.

Bradley R. Brewer, of Brewer & Soeiro, and Warren S. Zweiback and Scott H. Rasmussen, of Zweiback, Flaherty, Betterman & Lamberty, P.C., for appellants.

Frederick L. Warren, of Stokes, Lazarus & Carmichael, and C.G. Wallace III, of Thompson, Crounse, Pieper & Quinn, for appellees.

HASTINGS, C.J., CAPORALE, GRANT, and FAHRNBRUCH, JJ., and JOHN MURPHY, D.J.

FAHRNBRUCH, J.

This is an appeal by the plaintiffs, Terry White, Betsy E. Brewer, and Rita Smailys, from the dismissal of their lawsuits against the defendants, Ardan, Inc., and Gary Curl, for (1) malicious termination of employment, (2) breach of contract by wrongful or "bad faith" discharge from employment, and (3) defamation. We affirm.

Plaintiffs contend their firings were based upon false statements that they were involved in dishonest acts during their employment at an Ardan, Inc., retail store in Omaha. Plaintiffs accuse the defendant Gary Curl, an Ardan security executive, of making the false statements.

In regard to the claims for malicious termination of employment and breach of contract by wrongful or "bad faith" discharge from employment, both defendants filed a motion for partial judgment on the pleadings. After argument, the motions were sustained, and these two claims were dismissed by the trial court.

A motion for judgment on the pleadings is properly granted when it appears from the pleadings that only a question of law is presented. A motion for judgment on the pleadings admits the truth of all well-pleaded facts in the opposing party's pleadings, together with all reasonable inferences to be drawn therefrom, and the moving party admits, for the purpose of the motion, the untruth of his own allegations insofar as they have been controverted. On a motion for judgment on the pleadings, the court may consider all the pleadings and give judgment for the party entitled thereto. *Mueller v. Union Pacific Railroad*, 220 Neb. 742, 371 N.W.2d 732 (1985). See, also, *Wood v. Tesch*, 222 Neb. 654, 386 N.W.2d 436 (1986).

On appeal, plaintiffs claim the trial court erred in determining that Nebraska does not recognize a cause of action in tort for malicious termination of employment or a cause of

action sounding in breach of contract for "bad faith" discharge based upon a "public policy" exception to the employment-at-will doctrine.

In analyzing the record and plaintiffs' briefs, we note their initial brief is not prepared in accordance with the rules of this court. Facts are cited and argued without proper reference to the record. See Neb. Ct. R. of Prac. 9 (rev. 1986). Plaintiffs' brief sets forth a proposition of law followed by a list of 38 "supporting authorities." Only five cases from that list are cited in the brief, and some of those are not properly cited or referenced.

It has long been the rule of this court that it is counsel's duty to point out specifically alleged errors, and, unless the briefs indicate at what page of the bill of exceptions these may be found, the court will not search for nor consider them. See *Stroman v. Atlas Refining Corporation*, 112 Neb. 187, 199 N.W. 26 (1924). It is the duty of counsel in briefing a case for this court to comply with the rules, and so assist the court in the ready transaction of business. If counsel fails to do so, the court may, at its option, correct any plain error observed in the record which is of such a nature as to have probably caused a miscarriage of justice. See, *In re Estate of Fischer*, 227 Neb. 722, 419 N.W.2d 860 (1988); *In re Interest of A. W.*, 224 Neb. 764, 401 N.W.2d 477 (1987); *Winterringer v. Sellen*, 97 Neb. 739, 151 N.W. 162 (1915).

There is no pleading or claim that the plaintiffs were employed by Ardan for a definite period of time. Since all parties treated the plaintiffs as employees at will, we also shall treat them as such.

Plaintiffs first claim they were discharged from Ardan's employment maliciously. In their brief, plaintiffs alleged:

Nebraska should recognize *and does recognize* both (a) a cause of action sounding in tort for malicious termination of employment and (b) a cause of action sounding in contract for discharge in bad faith where the plaintiff alleges that he was discharged from his employment (1) without reasonable cause, (2) on the basis of knowingly false allegations of dishonesty and theft of property, and (3) for the specific purpose of depriving him of valuable

terms and conditions of employment enjoyed by the plaintiff as a matter of contractual right before the discharge.

(Emphasis supplied.) Brief for appellants at 6.

For that proposition of law, plaintiffs cite the Nebraska case of *Mau v. Omaha Nat. Bank*, 207 Neb. 308, 299 N.W.2d 147 (1980). Their reliance is misplaced. *Mau* stands for the general rule that when employment is not for a definite term, and there are no contractual or statutory restrictions upon the right of discharge, an employer may lawfully discharge an employee whenever and for whatever cause he chooses, without incurring liability.

*Mau* does recognize that the employment-at-will rule is not, in some jurisdictions, an absolute bar to a claim of wrongful discharge. In a number of jurisdictions, an exception to the "terminable-at-will" rule has been articulated in recent years. Under this exception, an employee may claim damages for wrongful discharge when the motivation for the firing contravenes public policy. At the time of *Mau*, Nebraska had not adopted the exception.

Certain exceptions to the "terminable-at-will" rule have, however, been recognized by this court. Those instances include where the discharge infringes upon a constitutionally protected interest of the employee and where a statute or contract prohibits an employer from discharging an employee for a particular reason or without good cause. *Schriner v. Meginnis Ford Co.*, 228 Neb. 85, 421 N.W.2d 755 (1988), lists a number of Nebraska cases supporting these propositions.

In this case, our attention has not been directed to, nor have we found, any Nebraska case that recognizes a cause of action sounding in tort for malicious termination of employment. As previously stated, unless constitutionally, statutorily, or contractually prohibited, an employer may terminate an at-will employee at any time with or without reason and not be liable for his actions.

There are no allegations which bring the plaintiffs within the constitutional, statutory, or contractual protection against their firings.

Plaintiffs have invited this court to declare by judicial fiat, as

a matter of public policy, a cause of action for malicious termination of employment and a cause of action for "bad faith" discharge from employment. It is proposed that these two causes of action would be exceptions to the "employment-at-will" rule which permits an employer to discharge an employee whenever and for whatever cause he chooses, without incurring liability. We decline the invitation. Instead, we adhere to our observations in *Schriner v. Meginnis Ford Co., supra* at 91, 421 N.W.2d at 758-59:

> The Supreme Court of Hawaii, in *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 652 P.2d 625 (1982), recognized that public policy can be difficult to define, but quoted with approval a definition which included in public policy those matters embodied in state statutes. In holding that public policy protected one presumably discharged because she gave truthful answers in an antitrust investigation, the *Parnar* court nonetheless cautioned: "In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial decisions may also establish the relevant public policy. However, courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject. Of course, the plaintiff alleging a retaliatory discharge bears the burden of proving that the discharge violates a clear mandate of public policy." *Id.* at 380, 652 P.2d at 631. We agree with that caveat and agree as well with the observation in [*Adler v. American Standard Corp.*, 830 F.2d 1303 (4th Cir. 1987)], that courts must use care in creating new public policy and that " 'recognition of an otherwise undeclared public policy as a basis for a judicial decision involves the application of a very nebulous concept to the facts of a given case, and that declaration of public policy is normally the function of the legislative branch.' " (Citations omitted.) *Adler* at 1306.

There being a cause of action in Nebraska neither for malicious termination of employment nor for bad faith

discharge from employment, we find that on those alleged causes of action the defendants were entitled to judgment on the pleadings.

Next to be considered are the plaintiffs' allegations that they should recover damages because the defendants published defamatory material about them. The trial judge found there was no genuine issue as to the material facts on this defamation issue and granted defendants' motions for summary judgment, thereby dismissing the balance of plaintiffs' lawsuit.

On appeal, we are required to view the evidence most favorably to a party against whom the motion for summary judgment is directed, giving to that party the benefit of all the favorable inferences which may reasonably be drawn from the evidence. A party is entitled to summary judgment if the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact, that the ultimate inferences to be drawn from those facts are clear, and that the moving party is entitled to judgment as a matter of law. See, *County of Polk v. Wombacher*, 229 Neb. 239, 426 N.W.2d 266 (1988); *Hirschman v. Maddox*, 223 Neb. 302, 389 N.W.2d 297 (1986).

Inherent in the trial judge's dismissal of the case is a finding that there was no evidence to support the plaintiffs' claim of wrongful publication of defamatory material, or that the defamatory material was true, or both. Both possibilities will be examined.

Neb. Rev. Stat. § 25-839 (Reissue 1985) provides:

In an action for a libel or slander it shall be sufficient to state, generally, that the defamatory matter was published or spoken of the plaintiff, and if the allegation be denied, the plaintiff must prove on the trial the facts, showing that the defamatory matter was published or spoken of him.

Neb. Rev. Stat. § 25-840 (Reissue 1985) provides:

In the actions mentioned in section 25-839, the defendant may allege the truth of the matter charged as defamatory . . . . The truth in itself and alone shall be a complete defense unless it shall be proved by the plaintiff that the publication was made with actual malice. Actual malice shall not be inferred or presumed from

publication.

The defendants' answer denied that defamatory material about each of the plaintiffs was false and that it was wrongfully published.

Each plaintiff claims that defendant Curl, as Ardan's security executive, maliciously, and with intent to harm the plaintiffs, made false written statements regarding each plaintiff's firing. Plaintiffs allege Curl, knowing certain statements to be false, showed those statements to Ardan supervisory personnel and to others. Plaintiffs allege the statements were not privileged when made to Ardan personnel.

Plaintiff Brewer claims the false statement made and published defaming her states she engaged in " 'unauthorized (fraudulent) use of mystery discounts.' "

Brewer used one of the store's promotional 50-percent mystery discount coupons to purchase a video recorder. The coupons were contained in Ardan's catalogs. When a customer purchased an item and did not have a coupon, the checkout cashier would furnish one to the customer at the time of a purchase. In either event, the surface of the coupon was not to be disturbed until after a purchase was made. After the purchase, the cashier removed the surface of the coupon by scratching it, and the amount of the discount was revealed. Discounts ranged from 10 to 50 percent. Brewer admitted that she removed the surface off several coupons until she found a 50-percent discount coupon. She obtained the coupons from a security booth while no one was there. Brewer knew before she went to the cashier to complete her purchase that the coupon she used represented a 50-percent discount. Brewer claims that the store manager advised employees that each could use one discount coupon.

In her written statement, Brewer also stated she and a coworker "used 30% mystery discount on baby gift." When Brewer used the 50-percent discount coupon, she signed the name of her sister's business on the back of the coupon, according to her signed statement. There is nothing in the record that employees were ever authorized to determine the value of a coupon before presenting it to a cashier on a purchase. In her deposition, when asked: "Now, you admitted

that what you did was wrong and you agreed it [sic] pay for the items; did you not?" Brewer replied, "Well, yes." She testified she did in fact pay Ardan back on the item purchased with a 50-percent discount coupon. She testified there was nothing untrue in the statements that Ardan made.

Plaintiff Smailys complains that her notice of termination falsely states that she had been an "accomplice in fraudulent discounts (theft)." In her deposition, Smailys testified she did not use a coupon, but gave a 50-percent discount coupon to her boyfriend so he would not have to chance getting a lesser discount. The boyfriend used the coupon to purchase a camera, which he placed on layaway. Smailys also testified that while working at the store's courtesy desk, she checked out some employees who used 50-percent discount coupons, the surfaces of which had been removed to reveal the value of the discount before they were presented to her. Smailys testified she knew the procedure she used was not authorized. She testified she knew it was wrong for her to honor a coupon where the amount of the discount was revealed before it was presented to a checkout person.

Plaintiff White claims that she was defamed by Curl's making and publishing her termination form which falsely stated, "Assisted fellow employees in the fraudulent use of discounts in the showroom." White testified in her deposition she was the cashier that checked out her coplaintiff, Betsy Brewer, when Brewer used a 50-percent coupon improperly. She testified she knowingly gave a coupon, the value of which had previously been revealed, to someone before it was used to purchase an item. Referring to Brewer, Smailys, and herself, White testified about the misuse of coupons, "Yes, we're guilty. I don't think we should have been terminated."

Generally, whether a publication is privileged is a question of law to be determined by the court. *Turner v. Welliver*, 226 Neb. 275, 411 N.W.2d 298 (1987). A communication is privileged if made bona fide by one who has an interest in the subject matter to one who also has an interest in it or stands in such relation that it is a reasonable duty, or is proper, for the writer to give the information. *Turner v. Welliver, supra*; *Kloch v. Ratcliffe*, 221 Neb. 241, 375 N.W.2d 916 (1985); *Dangberg v. Sears, Roebuck*

*& Co.*, 198 Neb. 234, 252 N.W.2d 168 (1977).

Here, the plaintiffs claim that Curl was acting as an employee of Ardan's in a security capacity when he made the statements regarding the terminations. Each plaintiff testified she did not know of any publication to individuals other than Ardan personnel. Curl's relationship with Ardan was such that it was not only his duty but also his responsibility to give the information contained in the statements to Ardan personnel, such as the store and regional managers. There is no evidence Curl gave the statements to anyone else. The statements made to Ardan personnel were privileged, absent proof of malice. See, *Kloch v. Ratcliffe, supra*; *Bartels v. Retail Credit Co.*, 185 Neb. 304, 175 N.W.2d 292 (1970).

The record clearly shows that each alleged defamatory statement was true. As a matter of law, the defendants were entitled to a summary judgment on the defamation issue unless the plaintiffs proved malice. There is no evidence reflecting maliciousness on the part of Curl when he revealed either the plaintiffs' statements or the results of his own investigation to Ardan personnel. Brewer testified she had no evidence of malice on the part of Curl in making the statements of which she was complaining. Smailys testified "I guess not" when asked if she had any evidence of specific acts of malice on the part of Curl. White testified she did not have any facts evidencing intent on the part of the defendants to harm her. The trial court correctly concluded that the defendants were entitled to a summary judgment on the defamation issue. The plaintiffs' assignment of error addressing defamation is without merit.

On appeal, plaintiffs claim that the trial judge failed to give proper consideration to plaintiffs' "affidavits" received in evidence at the summary judgment hearing. Plaintiffs attempted to "correct" or "explain" "the intended" meaning of the statements made during their depositions. The exhibits received in evidence were not executed by the plaintiffs, nor do they reflect that the plaintiffs took an oath that the "facts" contained in the "affidavits" were true. The three affidavits are virtually carbon copies and contain the "understandings," "beliefs," and conclusions of the plaintiffs. Plaintiffs'

"affidavits" argue with statements in the defendants' brief filed in support of defendants' motions for summary judgment.

The rule in Nebraska regarding such affidavits requires that "[s]upporting and opposing affidavits [1] shall be made on personal knowledge, [2] shall set forth such facts as would be admissible in evidence, and [3] shall show affirmatively that the affiant is competent to testify to the matters stated therein." Neb. Rev. Stat. § 25-1334 (Reissue 1985).

In construing § 25-1334, this court has held that " ' " '[u]nder this provision [Fed. R. Civ. P. 56(e)] . . . statements in affidavits as to opinion, belief, or conclusions of law are of no effect. The same is true of summaries of facts or arguments, and of statements which would be inadmissible in evidence . . . .' " ' " *In re Estate of Villwok,* 226 Neb. 693, 696, 413 N.W.2d 921, 924 (1987); *Hanzlik v. Paustian,* 216 Neb. 575, 344 N.W.2d 649 (1984) (citing *Eden v. Klaas,* 165 Neb. 323, 85 N.W.2d 643 (1957)). See, also, *Marshall v. Radiology Assoc.,* 225 Neb. 75, 402 N.W.2d 855 (1987).

In writing this opinion, great care has been taken to use only that deposition testimony of each plaintiff that is unambiguous and where the intent of the party is clearly shown. We note that each plaintiff was represented by counsel at the time her deposition was taken. At that time, apparently, there was no question as to the clarity or intent of answers the plaintiffs gave. At least, there were no questions by the plaintiffs' own counsel to clarify any "ambiguous" or "confused" answer.

The plaintiffs' complaints regarding the consideration given to their affidavits are without merit.

Plaintiffs White and Brewer claim that res judicata should preclude the defendants from claiming that the charges of fraudulent and wrongful conduct alleged against them are true.

White and Brewer applied for unemployment pay pursuant to the Nebraska Employment Security Law. An initial unemployment determination found they were guilty of "willful intentional misconduct," which disqualified them from receiving benefits for 10 weeks. Neb. Rev. Stat. § 48-628(b) (Cum. Supp. 1986). On appeal, an administrative law judge reversed that finding. Ardan's did not appeal from the administrative law judge's decision.

22

White and Brewer's brief claims the benefit of the res judicata doctrine, but their argument does not set forth any Nebraska authority for their position. Neb. Rev. Stat. § 48-636 (Cum. Supp. 1986) provides that any determination made under the Nebraska Employment Security Law is *conclusive for the purpose of that law*. Here, we are not dealing with the Nebraska Employment Security Law, and we decline to apply res judicata as plaintiffs request.

None of the plaintiffs' assignments of error have any merit, and the trial judge's rulings should be affirmed.

AFFIRMED.