MICHAEL D. MATHESON, APPELLANT, V. DEL STORK ET AL., APPELLEES.

477 N.W.2d 156

Filed November 22, 1991.    No. 89-784.

Thom K. Cope and Patricia A. Knapp, of Bailey, Polsky, Cope & Wood, for appellant.

Paul M. Schudel, of Woods & Aitken, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Plaintiff-appellant, Michael D. Matheson, asserts in his third amended petition that defendants-appellees, Del Stork and Doug Gilg, tortiously interfered with the business relationship or expectancy he had enjoyed with his former employer, The Goodyear Tire and Rubber Company (initially also named as a defendant and brought to this court as an appellee but later dismissed pursuant to the stipulation of all the then parties), and that Stork and Gilg defamed him as well. The district court concluded the aforesaid operative petition failed to state a cause of action, sustained the demurrer filed by Stork and Gilg, and, upon Matheson's election to stand on the operative petition, dismissed the suit. Matheson claims the district court erred in determining that he had stated neither (1) a tortious interference action nor (2) a defamation action. We affirm.

As to the claim that Stork and Gilg interfered with his business relationship or expectancy with Goodyear, Matheson alleges, in summary:

1. His employment by Goodyear constituted a business relationship between Goodyear and himself, and this relationship was known to his fellow employees Stork and Gilg.

2. As Matheson's direct supervisor, Gilg had evaluated Matheson on a regular basis. However, in the summer of 1987, contrary to the established chain of command, Stork, who supervised both Gilg and Matheson, began evaluating the latter.

3. In the past, Matheson's performance had always been rated as surpassing Goodyear's normal requirements. However, in the summer of 1987, Stork and Gilg evaluated Matheson's performance as poor. This was done intentionally, in bad faith, and with malice arising out of the personal ill will generated by Matheson's challenge of Stork's and Gilg's authority and the resulting "business related confrontations."

4. As a direct consequence of his evaluation, Stork, on August 7, 1987, directed to named individuals a memorandum headed "GOODYEAR-LINCOLN," which further reads:

### DEVELOPMENT PERSONNEL

Effective immediately M D Matheson is transferred to Hose Design responsible for all Ford specs, order handling, POI program coordination, and CADAM-CATIA coordination. H X Nguyen will be responsible for Ford branched hose design, and Asia-Pacific hose. A H Renard will be responsible for Ford coolant hose, except branched Ford fuel system hose and ARP hose.

M D Matheson is replaced in Process Engineering by C E Block.

5. Goodyear's hose design group "was not consonant" with Matheson's professional qualifications in that it required less technical expertise than his prior position in the process engineering group, nor was the hose design group position as personally and professionally advantageous to Matheson as was the process engineering position for which he had been hired. The transfer placed Matheson in a position for which he had not been hired and was a "demotion and a detriment to his career."

6. In effecting the transfer, Stork and Gilg, acting outside the scope of their duties, for their own personal gain and for no

business purpose of Goodyear, "personally, purposefully, unjustifiably, and intentionally" interfered with Matheson's relationship with Goodyear.

7. As a result of the transfer, which Stork and Gilg knew was not consonant with his qualifications, Matheson was "constructive[ly] discharge[d]," forced to involuntarily terminate his business relationship with Goodyear, and made to seek other employment.

8. Stork and Gilg acted as above described not for any business purpose of Goodyear, but for their personal gain and to eliminate Matheson from Goodyear's employment, as the consequence of all of which Matheson suffered damages.

As to the claim that Stork and Gilg defamed him, Matheson reiterates all of the foregoing allegations and adds:

1. In intentionally and unjustifiably effecting Matheson's transfer, Stork and Gilg intentionally made a constructive statement to the effect that Matheson was not capable, proficient, qualified, or fit to perform the duties of his employment.

2. Said constructive statement defamed him, as it "became known to other engineers" in his field and put his competence as a developmental engineer, both generally and with respect to his performance at Goodyear, into question in the engineering community.

3. Stork and Gilg knew or should have known that their constructive statement would have become known to other engineers.

We begin our analysis by recalling that in ruling on a demurrer, the petition is to be liberally construed; if as so construed the petition states a cause of action, the demurrer is to be overruled. *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991). In considering a demurrer, a court must

> "assume that the pleaded facts, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of a fact not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial."

*Hecker v. Ravenna Bank*, 237 Neb. 810, 812, 468 N.W.2d 88, 92

(1991). Stated more simply, a demurrer tests the substantive legal rights of the parties, based on facts and reasonable inferences therefrom, not conclusions. *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 234 Neb. 789, 452 N.W.2d 746 (1990). A petition will be found sufficient if, from the statement of facts set forth in the petition, the law entitles a plaintiff to recover. *Ruwe v. Farmers Mut. United Ins. Co.*, 238 Neb. 67, 469 N.W.2d 129 (1991). Facts are sufficient to constitute a cause of action when they are a narrative of the events, acts, and things done or omitted which show a legal liability of the defendant to the plaintiff. *Gruenemeier v. Seven-Up Co.*, 229 Neb. 267, 426 N.W.2d 510 (1988).

Matheson's first assignment of error avers the district court erred in determining that he failed to well plead facts sufficient to state a tortious interference with his Goodyear business relationship or expectancy.

The necessary elements of tortious interference with a business relationship or expectation are (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted. *Community Title v. Roosevelt Federal S&L*, 796 S.W.2d 369 (Mo. 1990); *Gordon v. Noel*, 356 N.W.2d 559 (Iowa 1984); *Stofer v. First Nat. Bank of Effingham*, 212 Ill. App. 3d 530, 571 N.E.2d 157 (1991); *Dolenga v. Aetna*, 185 Mich. App. 620, 463 N.W.2d 179 (1990); *Quail Ridge Assocs. v. Chemical Bank*, 162 A.D.2d 917, 558 N.Y.S.2d 655 (1990). See, also, *Miller Chemical Co., Inc. v. Tams*, 211 Neb. 837, 320 N.W.2d 759 (1982); *DeLay First Nat. Bank & Trust Co. v. Jacobson Appliance Co.*, 196 Neb. 398, 243 N.W.2d 745 (1976). However, any suggestion in *Miller Chemical Co., Inc. v. Tams, supra*, that an intentional but justified interference may subject the interfering party to liability is disapproved.

The gravamen of the tortious interference aspect of Matheson's suit is that Stork and Gilg, acting outside the scope of their employment authority, for purposes of their own and with bad motives, intentionally interfered with Matheson's

employment relationship with Goodyear by causing him to be transferred from one division to another, thus forcing him to resign.

Since Matheson did not allege the existence of a contract obligating Goodyear to employ him for a particular period of time, it must be inferred that he was an at-will employee. Assuming, but not deciding, that there can ever be a tortious interference with such an employment relationship, and assuming further, but again not deciding, that another employee acting outside his or her employment authority may under any circumstances tortiously interfere with such a relationship, Matheson's pleading nonetheless fails to state a cause of action under this theory of recovery.

Matheson has pled no facts which support his conclusion that the fourth or fifth elements of tortious interference, harm and damages, exist. Even if the transfer from one division to the other was brought about by tortious interference, Matheson's charge fails to allege facts from which it can reasonably be inferred that the transfer was in fact retrogressive and thus the demotion he claims it was. While he asserts that the transfer was "not consonant" with his professional qualifications and that it was not as "personally and professionally advantageous," these claims alone state nothing more than Matheson's personal dissatisfaction with the transfer.

The operative petition is void of facts showing a distinction between the process engineering group and the hose design group. Matheson has pled nothing about the duties of each position, rates of pay, supervisory duties, working conditions, opportunities for advancement, or comparative duties. No matter how liberally a petition is construed, a court may not supply facts which are not pled. As Matheson has failed to plead facts from which it can be inferred that he was harmed, there can be no damages. See *Prather v. Eisenmann*, 200 Neb. 1, 11, 261 N.W.2d 766, 772 (1978) ("[t]he measure of recovery in all civil cases is compensation for the injury sustained"). There is thus no merit to Matheson's first assignment of error.

The essence of Matheson's second assignment of error, which asserts the district court erred in determining that he failed to well plead facts sufficient to state a defamation action, is that

he was defamed by the memorandum described earlier.

Spoken or written words are slanderous or libelous per se only if they falsely impute the commission of a crime involving moral turpitude, an infectious disease, or unfitness to perform the duties of an office or employment, or if they prejudice one in his or her profession or trade or tend to disinherit one. See *Nelson v. Rosenberg*, 135 Neb. 34, 280 N.W. 229 (1938). In determining whether a communication is libelous or slanderous per se, the court must construe the questioned language "in its ordinary and popular sense." *Hennis v. O'Connor*, 223 Neb. 112, 116, 388 N.W.2d 470, 474 (1986). Moreover, where a communication is "ambiguous or . . . meaningless unless explained, or . . . *prima facie* innocent, but capable of defamatory meaning, it is necessary to specially allege and prove the defamatory meaning of the words used, and to allege and prove special damages." *Hudson v. Schmid*, 132 Neb. 583, 587, 272 N.W. 406, 409 (1937). Further, the circumstances under which the publication of an allegedly defamatory communication was made, the character of the audience and its relationship to the subject of the publication, and the effect the publication may reasonably have had upon such audience must be taken into consideration. *Miller v. American Sports Co.*, 237 Neb. 676, 467 N.W.2d 653 (1991).

Matheson asserts no single express statement, written or spoken, by Stork or Gilg which defames him. Rather, Matheson bases his attempt to state a cause of action under the defamation theory of recovery on a claimed "constructive statement" implicitly made through the distribution of the memorandum, which he asserts was "to the effect" that he "was not capable, proficient, qualified or fit to perform the duties of his employment," thus raising a question of his competence as an engineer and thereby defaming him generally and before the "engineering professional community." Yet, the contents of the memorandum belie Matheson's conclusory allegations. The memorandum does nothing more than announce that certain duties are assigned to Matheson, that he is transferred from one division to another, and that certain others shall be responsible for designated activities. It does not criticize Matheson in any way. The memorandum is at best,

from Matheson's point of view, "ambiguous or . . . meaningless unless explained." *Hudson, supra* at 587, 272 N.W. at 409.

Matheson's failure to allege facts which give the words used in the memorandum a defamatory meaning is fatal to the stating of a cause of action. There is thus no merit to Matheson's second assignment of error.

The record failing to sustain either of Matheson's assigned errors, the district court's judgment of dismissal is affirmed.

AFFIRMED.