ANN L. HOSCHLER, APPELLANT, V. EMILY CUNNINGHAM KOZLIK, APPELLEE.

529 N.W.2d 822

Filed April 11, 1995.  No. A-93-771.

Tim B. Streff and J. Patrick Green, of Wintroub, Rinden and Sens, for appellant.

Brian D. Nolan, of Hansen, Engles & Locher, P.C., for appellee.

HANNON, IRWIN, and MUES, Judges.

MUES, Judge.

Ann L. Hoschler filed a petition alleging that Emily Cunningham Kozlik intentionally interfered with her contract of employment with the YWCA. Kozlik demurred to the petition on the ground that it failed to state a cause of action. The district court sustained Kozlik's demurrer and, upon Hoschler's election to stand on her petition, dismissed the action. Hoschler then appealed to this court.

## STANDARD OF REVIEW

■ Whether a petition states a cause of action is a question of law regarding which an appellate court has an obligation to reach a conclusion independent of that of the inferior court. *Vanice v. Oehm*, 247 Neb. 298, 526 N.W.2d 648 (1995); *K Corporation v. Stewart*, 247 Neb. 290, 526 N.W.2d 429 (1995).

## FACTS AS ALLEGED

■ In an appellate court's review of a ruling on a general demurrer, the court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of

law and fact which may be drawn therefrom, but not the conclusions of the pleader. *Merrick v. Thomas*, 246 Neb. 658, 522 N.W.2d 402 (1994). Hoschler asserts that she was employed by the YWCA as a program coordinator in the "Women Against Domestic Violence" program until she was terminated on February 5, 1993. Kozlik was the executive director of the YWCA. Hoschler's petition further alleges:

> 3. . . . Plaintiff's employment was governed by an employee handbook provided by the YWCA which in part provided certain procedures, policies, and guidelines for termination of an employee. These policies limited the power and authority of officers of the YWCA such as Defendant.
>
> 4. The Plaintiff was fired by the Defendant on February 5, 1993 without the benefit of due process as required by the procedures, policies, and guidelines in effect in the employee handbook at the time. Such firing of Plaintiff was outside the scope of the authority granted to Defendant by the YWCA and was done with malice to inflict harm on Plaintiff and to destroy her ongoing relationship with the YWCA.
>
> 5. Defendant's conduct was an intentional interference with Plaintiff's contract of employment with the YWCA.

Hoschler claims that as a consequence, she suffered damages resulting from lost wages, both past and future; a diminution in the value of her pension; a loss of fringe benefits; mental distress; humiliation; and embarrassment.

## ASSIGNMENT OF ERROR

Hoschler's sole assignment of error is that the district court erred in sustaining Kozlik's demurrer and dismissing the petition.

## ANALYSIS

Although Hoschler's petition characterizes her action as one for "intentional interference" with her contract of employment, we construe it as an attempt to state a cause of action generally labeled in Nebraska jurisprudence as one for "tortious interference with a business relationship or expectation." The question before us is whether Hoschler's

petition states a cause of action under that theory of recovery. In Nebraska, it is established that the elements necessary to state such a cause of action include (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted. *Matheson v. Stork*, 239 Neb. 547, 477 N.W.2d 156 (1991).

A cause of action is stated where a narrative of events, acts, and things alleged in the petition to have been done or omitted shows legal liability on the part of a defendant to a plaintiff. *K Corporation v. Stewart*, 247 Neb. 290, 526 N.W.2d 429 (1995). In determining whether a cause of action has been stated, the petition is to be construed liberally. If as so construed the petition states a cause of action, a demurrer based on the failure to state a cause of action is to be overruled. *Wheeler v. Nebraska State Bar Assn.*, 244 Neb. 786, 508 N.W.2d 917 (1993), *cert. denied* \_\_\_\_ U.S. \_\_\_\_, 114 S. Ct. 1835, 128 L. Ed. 2d 463 (1994). We thus proceed to analyze Hoschler's petition under the foregoing principles.

We have no reservation in concluding that the petition satisfies elements Nos. 2, 4, and 5 as required by *Matheson, supra*. That Kozlik, as executive director of the YWCA, had knowledge of Hoschler's employment relationship with the YWCA and that the alleged interference caused harm and damages to Hoschler is obviously stated. Thus, we concentrate our analysis on the first and third elements as identified in *Matheson*.

*Valid Business Relationship or Expectancy.*

To be actionable as tortious interference with a business relationship, the interference must necessarily impact on a valid business relationship or expectancy. *Matheson, supra*. Thus, the nature of the relationship with which Kozlik allegedly interfered must be examined. Hoschler did not allege the existence of a contract obligating the YWCA to employ her for a particular period of time or that the employee handbook

contractually modified her employment. In such circumstance, we must properly infer that she was an at-will employee. See *Matheson, supra.* Does an at-will employment relationship constitute a "valid business relationship" that can be the subject of an action for tortious interference? Although Kozlik does not raise this issue, it was expressly left unresolved by the Supreme Court in *Matheson, supra,* and we view it as a threshold issue in this appeal.

We are mindful that the Supreme Court has previously held, in *White v. Ardan, Inc.*, 230 Neb. 11, 430 N.W.2d 27 (1988), that there is no cause of action in Nebraska for the tort of "malicious termination." In *White*, plaintiffs brought an action against both their employer, Ardan, Inc., and an Ardan security executive for malicious termination, breach of contract by wrongful or "bad faith" discharge, and defamation. Plaintiffs were presumed to be at-will employees and argued that they were terminated based upon false statements made by the security executive that they were involved in dishonest acts during their employment. Hoschler's petition obviously has similarities with the claim of the plaintiffs in *White*, i.e., that a coemployee, through his or her intentional and malicious acts, interfered with their at-will employment. Nevertheless, the facts in *Matheson* were also similar to those alleged by the plaintiffs in *White*. In *Matheson*, some 3 years later, the court specifically framed the issue in the context of "tortious interference" and not "malicious termination." We believe that the Supreme Court would approach Hoschler's petition similarly and not deem *White* as dispositive of whether Nebraska recognizes a cause of action for tortious interference involving an at-will employee.

The majority of courts addressing this issue have concluded that a cause of action for tortious interference can be maintained even when the business relationship being interfered with is an at-will employment relationship. See, e.g., *Nordling v. Northern States Power Co.*, 478 N.W.2d 498 (Minn. 1991); *Toney v. Casey's General Stores, Inc.*, 460 N.W.2d 849 (Iowa 1990); *Hennum v. City of Medina*, 402 N.W.2d 327 (N.D. 1987); *Benny M. Estes and Assoc. v. Time Ins.*, 980 F.2d 1228 (8th Cir. 1992) (applying Arkansas law);

*Western Fireproofing Co. v. W.R. Grace & Co.*, 896 F.2d 286 (8th Cir. 1990) (applying Missouri law). See, also, generally, Annot., 5 A.L.R.4th 9 (1981). In protecting at-will employment relationships, courts have reasoned that although an employment relationship is terminable at will, the fact that a relationship is at the will of the employer and employee does not make it at the will of others who wrongfully interfere with the relationship. See, *Nordling, supra; Aalgaard v. Merchants Nat. Bank, Inc.*, 224 Cal. App. 3d 674, 274 Cal. Rptr. 81 (1990), *cert. denied* 502 U.S. 901, 112 S. Ct. 278, 116 L. Ed. 2d 230 (1991). This reasoning corresponds with the Restatement (Second) of Torts § 766, comment *g.* at 10-11 (1979), which provides, with regard to a cause of action for tortious interference with a terminable at-will employment contract:

> Until [the employee or employer] has so terminated [the at-will contract], the contract is valid and subsisting, and the defendant may not improperly interfere with it. The fact that the contract is terminable at will, however, is to be taken into account in determining the damages that the plaintiff has suffered by reason of its breach.

Therefore, the fact that an at-will contract may be terminated by the parties without liability does not necessarily privilege another individual, business, or entity, in other words, a "third person," to unjustifiably induce the termination. We find this reasoning persuasive and conclude that Hoschler's inferred at-will employment status, in and of itself, does not preclude a claim for tortious interference with her employment relationship with the YWCA.

*Unjustified Interference.*

The third element of a cause of action for tortious interference requires that the interference was "unjustified." See *Matheson v. Stork*, 239 Neb. 547, 477 N.W.2d 156 (1991). An examination of what is sufficient to constitute an "unjustified" interference is therefore necessary. The Restatement has labeled the type of interference required to state a cause of action for tortious or intentional interference as "improper."

One who *intentionally and improperly* interferes with

the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

(Emphasis supplied.) The Restatement, *supra*, § 766 at 7. Section 767 of the Restatement sets forth the factors to consider in determining whether an act of interference is improper:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties.

*Id*. at 26-27. We believe that the factors recited by the Restatement for determining whether an action is "improper" are equally applicable to determining whether an action is "unjustified." See NJI2d Civ. 17.02 comment and authorities.

■ Hoschler has essentially alleged that Kozlik acted outside the scope of her authority in firing Hoschler in intentional disregard of the procedures, policies, and guidelines in effect in the employee handbook at the time and "with malice to inflict harm." Black's Law Dictionary 956 (6th ed. 1990) defines "malice" as intentionally doing "a wrongful act toward another without justification or excuse." We believe that a proper and reasonable inference to be drawn from Hoschler's use of the words "with malice to inflict harm" is that Kozlik's intentional acts were "unjustified." Thus, we conclude that the allegations are sufficient to satisfy this third element as delineated in *Matheson, supra*. Although malice, as such, is not an element of the tort of tortious interference in Nebraska, it is persuasive evidence on whether the defendant's conduct was proper and justified or improper and not justified. See *Nordling v. Northern States Power Co.*, 478 N.W.2d 498 (Minn. 1991).

*Acts of Coemployee.*

The main thrust of Kozlik's argument that the demurrer was properly sustained is that a cause of action is not properly stated against her because as executive director, she is the "alter ego" of the YWCA. We construe her argument to be that either she essentially *is* the YWCA and therefore not a "third person" or that she was "privileged" to interfere because she was acting as an agent of the YWCA and within the scope of her authority. The argument itself suggests that these are matters of defense and dependent on factual development and are not, thus, matters of law to be addressed by demurrer. Indeed, even the cases cited by Kozlik do not hold that, in every instance, a supervisory employee could never be held liable for tortious interference with a coemployee's business relationship with the common employer. See, *Bradley v. Consolidated Edison Co. of New York, Inc.*, 657 F. Supp. 197 (S.D.N.Y. 1987) (individually named defendants not liable for interference with a contractual relationship *where no allegation that any of them acted outside the scope of his or her authority as an agent of the employer*); *Dzierwa v Mich Oil Co*, 152 Mich. App. 281, 287, 393 N.W.2d 610, 613 (1986) (*summary judgment* was proper upon finding that the defendant "was" the company *after facts developed* to show that defendant was a director, president, and controlling shareholder of company with "express authority and responsibility for hiring, evaluating, supervising, and terminating plaintiff on behalf of" the company); *Cummings v. Walsh Const. Co.*, 561 F. Supp. 872, 883 (S.D. Ga. 1983) (noted in dicta that "if an employer's agent does not have absolute authority to fire an employee and does so improperly, that agent can be construed to be a 'third person' tort-feasor liable in an action for tortious interference" and that *whether such absolute authority exists is a question of fact*); *J. E. Brulatour, Inc. v. Wilmer & Vincent Corporation*, 63 N.Y.S.2d 54 (N.Y. Sup. 1946) (officer considered alter ego of corporation and not liable for inducing a breach of contract *where there is no allegation of an independent tort by defendant upon the plaintiff*).

In *Matheson v. Stork*, 239 Neb. 547, 477 N.W.2d 156 (1991), the court expressly reserved ruling on whether another

employee or supervisor may under any circumstances tortiously interfere with an employee's at-will employment relationship with the same employer. Many jurisdictions recognize that a cause of action for tortious interference does exist in favor of an employee and against another employee of the business, whether an officer, director, or other, in certain circumstances. Generally, the defendant's conduct is found actionable "where the action of a corporate officer, director, or employee was malicious, and where they were not acting within the scope of their authority," or "where the acts of a corporate officer, director, or agent involve individual and separate torts distinguishable from acts solely on the corporation's behalf or where his acts are performed, at least in part, in his interest and adverse to that of the firm." 45 Am. Jur. 2d *Interference* § 54 at 327 (1969). See, *Nordling v. Northern States Power Co.*, 478 N.W.2d 498 (Minn. 1991) (corporate officer or agent may be liable for tortious interference with another employee's at-will employment if he or she acts outside the scope of his or her duties); *Zappa v. Seiver*, 706 P.2d 440 (Colo. App. 1985) (genuine issue of material fact as to whether president's action in terminating vice president's at-will employment contract was motivated by improper personal reasons or by desire to serve corporate interests); *Stanfield v. Nat. Elec. Contractors Ass'n*, 588 S.W.2d 199 (Mo. App. 1979) (cause of action stated where petition alleged that corporate officer acted only from motivations of spite and ill will in inducing plaintiff corporate officer's discharge).

However, an "officer, director, or employee of a corporation is not liable for its breach of contract on the theory that he induced such breach if he acts in his official capacity on behalf of the corporation and not as an individual for his individual advantage." 45 Am. Jur. 2d, *supra*, § 54 at 327. The rationale for this rule was appropriately explained in *Nordling v. Northern States Power*, 478 N.W.2d at 505-06:

> If a corporation's officer or agent acting pursuant to his company duties terminates or causes to be terminated an employee, the actions are those of the corporation; the employee's dispute is with the company employer for breach of contract, not the agent individually for a tort.

> To allow the officer or agent to be sued and to be personally liable would chill corporate personnel from performing their duties and would be contrary to the limited liability accorded incorporation.

See, also, *Hickman v. Winston County Hosp. Bd.*, 508 So. 2d 237 (Ala. 1987) (associate administrator of hospital and supervisory employee not liable for tortious interference with former employee's contract of employment where no evidence that defendants acted outside the scope of their authority); *Murray v. Bridgeport Hosp.*, 40 Conn. Supp. 56, 480 A.2d 610 (1984) (former employee cannot state claim of interference with contract against supervisors where supervisors acted legitimately within scope of their authority and employee did not allege that supervisors profited by inducing alleged breach or that acts were motivated by personal feelings against employee).

█ It is apparent from the foregoing cases that the intentional interference by a fellow employee, including an officer, director, or other employee, in the employment relationship of another employee with a common employer, when it is malicious and thus unjustified or is outside the scope of authority of the interfering employee, gives rise to a cause of action for tortious interference. Again, Hoschler has alleged both maliciousness on the part of Kozlik and that she acted beyond her authority. We cannot infer from the allegations that Kozlik, as the executive director, was necessarily the alter ego of the YWCA or that her acts were within the scope of her responsibilities for the YWCA, particularly in the face of Hoschler's allegation that she acted *outside* of the authority granted to her by the YWCA. A demurrer goes only to those defects which appear on the *face* of the petition. *Pappas v. Sommer*, 240 Neb. 609, 483 N.W.2d 146 (1992); Neb. Rev. Stat. § 25-806 (Reissue 1989). Its function is necessarily limited to determining whether, on its face, the petition contains sufficient allegations to state a cause of action. We conclude that Hoschler's petition contains sufficient allegations to withstand a general demurrer.

## CONCLUSION

Kozlik did not seek to have Hoschler's petition made more definite and certain, but generally demurred to it. Accepting the allegations as true, as we must for purposes of a demurrer, Hoschler has alleged a cause of action against Kozlik for tortious interference with Hoschler's valid business relationship with the YWCA. The demurrer was erroneously sustained by the district court. Hoschler's action must be reinstated.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.